# UNITED STATES DISTRICT COURT
## IN THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Civil No. CC-08-96** |
| **REICHMANN PETROLEUM CORP.,** | § | **Civil No. CC-08-97** |
| **DEBTOR** | § | **Civil No. CC-08-98** |
| | § | **Civil No. CC-08-99** |
| | § | **Civil No. CC-08-120** |
| | § | **Civil No. CC-08-149** |
| | § | **Civil No. CC-08-150** |
| | § | **Civil No. CC-08-331** |
| | § | **Civil No. CC-08-332** |
| | § | **Civil No. CC-08-334** |
| | § | **Civil No. CC-09-13** |
| | § | **Civil No. CC-09-14** |

## MEMORANDUM OPINION AND ORDER

This is a consolidated appeal of several Bankruptcy Court decisions validating and invalidating mineral lien claims filed against various oil and gas leases operated by the debtor Reichmann Petroleum Corp. ("Reichmann") in Duval County, Hill County, Starr County, and Zapata County, Texas. The Bankruptcy Court held four separate hearings and entered five orders. Each order has a separate appellate record and addresses the validity of mineral lien claims filed against individual, or in some instances multiple, mineral leases operated by Reichmann. Twelve appeals[1] were filed with this Court, all of which raise many of the same legal issues. This Court consolidated the appeals into Civil Cause No. 2:08-96. There are twenty-three service companies seeking secured priority payment for the work they

---

[1] Civil Cause Nos. 2:08-96, 2:08-97, 2:08-98, 2:08-99, 2:08-120, 2:08-149, 2:08-150, 2:08-331, 2:08-332, 2:08-334, 2:09-13, and 2:09-14.

1

performed on these leases.  On appeal, this Court must examine each lien claim individually.

This order is composed of four parts.  The first part explains the factual and procedural background of this case.  The second part discusses the law applicable to the objections repeatedly raised in this appeal. In each remaining part, this Court examines the lien claim objections heard at one of the four hearings before the Bankruptcy Court.  A separate evidentiary record was developed at each hearing.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Reichmann filed Chapter 11 bankruptcy in December 2006.  At that time Reichmann was the operator and working interest owner of several mineral leases located throughout the State of Texas. Reichmann's creditors include various service companies that furnished materials, services, or equipment to Reichmann for use in drilling and producing oil and gas wells on these leases.  To secure payment for their services, the companies filed mineral lien claims against Reichmann's ownership interests in the leases, pursuant to TEX. PROP. CODE ANN. §56.002.

During the course of Reichmann's bankruptcy, the Bankruptcy Court approved a series of settlement agreements between Reichmann, the Chapter 56 mineral lien claimants, parties claiming to have an unassigned working interest in the leases ("Settling Working Interest Claimants"),[2] and the official unsecured creditors' committee.  Pursuant to these agreements, in exchange for paying off a certain amount of the mineral lien debt, the Settling

---

[2] "Unassigned Working Interest" is a defined term in the settlement agreements.  It is defined as " ... a Working Interest in the [lease name] for which no assignment was filed in the applicable real property records ..."

Working Interest Claimants could receive an assignment for a certain percent of their working interest in the applicable lease and get a release from the mineral liens. In return, the mineral lien claimants' claims would have priority as secured claims. In order to participate in the settlement agreement, the mineral lien claimants had to submit proof that their lien claims complied with Chapter 56 of the Texas Property Code. The settlement agreements established a procedure by which specified persons could file objections contesting the validity of mineral lien claims. The only grounds for objection were (1) the indebtedness secured by the lien is not owed by the Debtor, and (2) the lien fails to satisfy the requirements of Chapter 56 of the Texas Property Code.

Various parties filed objections to certain lien claims alleging they did not comply with Chapter 56 of the Texas Property Code. The Bankruptcy Court held four hearings at which it heard evidence and argument on the objections. The Bankruptcy Court entered five orders. Each order validates and invalidates certain lien claims.

Various Settling Working Interest Claimants, and in some instances Reichmann, appeal those Bankruptcy Court rulings that validate certain mineral liens. The value of the assignments the Settling Working Interest Claimants anticipate receiving under the settlement agreements will be diminished by the value of the mineral liens that are upheld. Those service companies whose liens were invalidated by the Bankruptcy Court appeal as well, contending their lien claims satisfy the statutory requirements.

## II.   LAW AND ANALYSIS

Statutory liens against mineral property are governed by Chapter 56 of the Texas Property Code.  TEX. PROP. CODE ANN. §56.001, et. seq.  In order to secure a lien against mineral property, a lien claimant must file an affidavit with the county clerk of the county in which the property is located.  *Id.* at §56.021(a).  "A lien claimant's affidavit must include: (1) the name of the mineral property owner involved, if known; (2) the name and mailing address of the claimant; (3) the dates of performance or furnishing; (4) a description of the land, leasehold interest, pipeline, or pipeline right-of-way involved; and (5) an itemized list of amounts claimed."  *Id.* at §56.022(a).

### A.   PROPERTY DESCRIPTION

The primary issue underlying this appeal is whether each lien affidavits provides a sufficient property description of the applicable mineral leases to satisfy section 56.022(a)(4).  *Id.* at §56.022(a)(4).  In all five orders, the Bankruptcy Court cited to *Blanco v. Porras*, 897 F.2d 788 (5th Cir. 1990) and held

> Reference to documents other than documents filed in the county real estate recording records, including reference to Texas Railroad Commission forms and permits, do not provide a nucleus of facts sufficient to describe the property.  Attaching a survey [or survey map] of the applicable mineral lease to the lien affidavit, however, is sufficient to satisfy the requirements of §56.022(a)(4) of the Texas Property Code.  In all instances where surveys [survey maps] were attached to the mineral lien claims ... the Court finds that such surveys [or survey maps] sufficiently describe the applicable lease, and therefore satisfy the property descriptions requirements of §56.022(a)(4) of the Texas Property Code.

4

This Court finds it is more appropriate to refer to the "surveys" or "survey maps" as "plats." It is uncontested that these plats are filed in the regular course of business with the Texas Railroad Commission, the state regulatory authority that has jurisdiction over all oil and gas wells in the State of Texas.  TEX. NAT. RES. CODE ANN. 81.051(a).

Various Settling Working Interest Claimants argue the plats are inadequate because they do not describe the *boundaries* of each applicable lease.  They contend the plats, at most, only describe certain 40 acre tracts of land that identify certain well sites on the leases.[3]

At oral argument on February 2, 2009, and in their briefing, the parties urged this Court to find that *Blanco, Inc. v. Porras*, 897 F.2d 788 (5th Cir. 1990), provides the controlling standard for this issue.  Citing to *Scholes v. Hughes*, 14 S.W. 148 (Tex. 1890),[4] the Fifth Circuit Court of Appeals in *Blanco* held that a property description is legally sufficient if it contains a nucleus of information that could enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty.  *Blanco*, 897 F.2d at 791.  In *Blanco,* the Fifth Circuit addressed the sufficiency of a property description under Chapter 53 of the Texas Property Code, which requires that a *mechanics' lien* affidavit

---

[3]  The Texas Administrative Code mandates that certain distances be kept between oil and gas wells.  16 TEX. ADMIN. CODE §3.37(a).  The minimum distance requirements are in place to provide standard development of a pattern of one well to each 40 acres in areas where proration units have not been established. *Id.* at §3.37(b).

[4]  In *Scholes*, the Texas Supreme Court considered whether the description "the brick city hall building to be erected in the city of Hilsboro," contained in a contract satisfied Rev. St. 1879, art. 3167, which provides that a contract filed to secure a mechanics lien shall be accompanied by a description of the lands, lots, houses, and improvements made, against which the lien is claimed.  *Scholes*, 14 S.W. at 148-49.

contain "a description, legally sufficient for identification, of the property charged with the lien." *Blanco*, 897 F.2d at 791; TEX. PROP. CODE ANN. §53.054(a)(6). At issue in this appeal is Chapter 56 of the Texas Property code, which provides that a *mineral lien* claim affidavit only include "a description" of the property. *Id*. at 56.022(a)(4). Chapter 56 provides a less stringent standard because it does not require that the description be "legally sufficient" as required by Chapter 53. If a property description satisfies the stricter standard set forth in *Blanco* it necessarily satisfies the less stringent property description required by Chapter 56.

Although the Supreme Court of Texas has not addressed the description issue in Chapter 56, the El Paso Court of Appeals applied the property description requirement of §56.022(a)(4) in *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc*., 799 S.W.2d 463 (Tex. App. – El Paso, 1990). There, various service companies filed Chapter 56 lien claims against oil and gas leases owned by Atkins Petroleum Corporation. *Trevor*, 799 S.W.2d at 465. As in this appeal, the claimants' lien affidavits varied in they way they described the oil and gas leases. The El Paso Court found the following three different methods for describing the lease were sufficient: (1) providing the date and place of recording of the oil and gas lease in the county records, (2) providing the section, block, survey name, and county for the lease, and (3) providing survey descriptions of the lease. *Id*. at 467.

> "...[T]he affidavit of R.A. Martine Pipe & Supply, Inc. states the oil and gas lease is **dated March 15, 1985, and recorded in Volume 517, page 549**, **Oil & Gas Lease Records of Upton County, Texas** with the names of the Lessee and Lessor and then a survey description. With that information the location of the

premises can be identified.  A Tommy White Supply Co., Inc. affidavit described the leasehold estate as located in **SW/4 of SE/4 of Section 43, Block 39, T-5-S, T & P RR Co. Survey, Upton County Texas**.  Other White affidavits followed that same pattern.  Likewise, United Pipe & Supply, Inc., Apache Services, Inc., Jim F. Webb, inc., Lufkin Industries, Inc. and BK Tubulars, Inc. **used survey descriptions** to identify the leasehold interest.  In each case there was a substantial compliance with the statutory requirement. "[5] *Id.* at 467.

The El Paso Court based its decision upon the holdings in *In re Mid-America Petroleum, Inc.*, 83 B.R. 937 (Bankr. N.D. Tex., 1988), *Continental Supply Co. v. Gillespie*, 269 S.W. 859 (Tex. Civ. App. – Galveston 1925, no writ), and *Youngstown Sheet & Tube Co. v. Lucey Products Co.*, 403 F.2d 135 (5th Cir. 1968).

In *Mid-America Petroleum*, the bankruptcy court considered whether certain Chapter 56 mineral lien affidavits provided a sufficient property description and decided they did not. *Mid-America*, 83 B.R. at 941.  The lien affidavits filed by Jimsco, Inc. and S & S Applicators, Inc. described the property as "Taylor-Link West S/A Unit, Taylor-Link West Field, Bakersfield, Pecos County, Texas." *Id.*  "The affidavit filed by SMC, Inc. described the property as MAP's [Mid-America Petroleum, Inc.] leasehold interest with improvements held by MAP under an oil and gas lease granted by the University of Texas and then listed the property as certain university wells, Pecos County, Texas." *Id.*  The bankruptcy court stated

---

[5] It is not entirely clear what the El Paso Court meant when it said "[l]ikewise ... [certain companies] used *survey descriptions* to identify the leasehold interest."  This Court does not know what information the lien affidavits filed by those companies provided.  However, by using the word "likewise" in reference and comparison to the preceding description, "SW/4 of SE/4 of Section 43, Block 39, T-5-S, T & P RR Co. Survey, Upton County Texas," the El Paso Court implies that providing the name of a survey is a sufficient description.

in its opinion that the lien affidavit must contain "a description of the land or the lease" and concluded the lien affidavits were insufficient to adequately identify the property on which their lien was claimed because no legal description was given, and no reference was made to any lease on file which contained a legal description. *Id.* at 942. Citing to *Boots Builders, Inc. v. Hobson Air Conditioning, Inc.*, 11 B.R. 635 (Bankr. N.D. Tex. 1981), the Bankruptcy Court reasoned "... that the leasehold on which the particular work was done and the materials furnished should be described with particularity so that a party familiar with the locality can identify the premises to the exclusion of others." *Mid-America*, 83 B.R. at 491.

The Fifth Circuit Court of Appeals in *Youngstown* held that a description of an oil and gas lease given by providing its date and place of recording in the county deed records is a sufficient description under TEX. REV. CIV. STAT. ANN. Art. 5473, a statute which was repealed and is now codified in Chapter 56 of the Texas Property Code. *Youngstown*, 403 F.2d at 144.

In *Continental Supply Co. v. Gillespie*, the affidavit before the court described the land as " ...certain land, premises and leasehold of land in what is know as the Markham Oil Field, in Matagorda county [sic], Tex., the description of which land and mineral lease thereon is not known to this affiant." *Gillespie*, 269 S.W. at 859. The Fifth Circuit Court of Appeals held this description was insufficient to fix a lien on mineral property under TEXAS CIV. ST. Art. 5639, a repealed statute related to warehouse receipts. *Id*. at 861.

8

The Court finds those lien affidavits that attach either a plat or a plat and a Texas Railroad Commission Form W-1 ("Form W-1") provide an adequate description of the applicable leases referenced in those documents and therefore satisfy §56.022(a)(4). Representative plats and Form W-1s for each lease are attached to this order in Appendix 1. Not only do these property descriptions fall within the precedent established by *Trevor Rees-Jones*, but they also satisfy the standard set forth in *Blanco*. Furthermore, this Court must take judicial notice of the statutes of the State of Texas, and it is well established Texas law that lien statutes are liberally construed in favor of protecting the interests of laborers and materialmen. *U.S. V. Guinn*, 454 F.2d 29, 38 (5th Cir. 1972) (citing *Lamar v. Micou*, 114 U.S. 218, 222 (1885)); *J.M. Blythe Motor Lines Corporation v. Blalock*, 310 F.2d 77, 78 (5th Cir. 1962) (citing *Mills v. Green*, 159 U.S. 651, 657 (1895)); *University Savings and Loan Association v. Security Lumber Company*, 423 S.W.2d 287 (Tex. 1968).

The State of Texas mandates that the county clerk shall record each deed, mortgage, or other instrument that is required or permitted by law to be recorded. TEX. LOC. GOV'T CODE ANN. §192.001. Texas courts recognize that an oil and gas lease is a conveyance of an interest in real property and therefore subject to the recording statutes. *Browning Oil Co., Inc. v. Luecke*, 38 S.W.3d 625 (Tex. App. – Austin, 2000); *Sheffield v. Hogg*, 77 S.W.2d 1021 (Tex. 1934). The county clerk of each county is required by statute to "maintain a well-bound alphabetical index to all recorded deeds, powers of attorney, mortgages, and other instruments relating to real property [located in that county]." TEX. LOC. GOV'T CODE ANN. §193.003(a); TEX. PROP. CODE ANN. §11.001(a). The index must state the specific location in the records

at which the instruments are recorded. TEX. LOC. GOV'T CODE ANN. §193.003(b). The index must be a cross-index that contains the names of the grantors and grantees in alphabetical order. *Id*. All records belonging to the office of the county clerk to which access is not otherwise restricted by law or by court order shall be open to the public at all reasonable times. *Id*. at §191.006.

The Texas Natural Resources Code provides for the establishment of the Railroad Commission of Texas, a state agency which has jurisdiction over all oil and gas wells in the State of Texas. TEX. NAT. RES. CODE ANN. §81.051(a)(2). The Texas Government Code provides that the secretary of state shall publish a Texas Administrative Code, which provides a system of procedures for practicing before the Railroad Commission of Texas. TEX. GOV'T CODE ANN. §2002.051; 16 TEX. ADMIN. CODE ANN. §1.1. State agency rules published in the Texas Administrative Code are to be judicially noticed. TEX. GOV'T CODE ANN. §2002.054(1).

The Railroad Commission of Texas ("RRC") mandates that an application for a permit to drill, deepen, plug back, or reenter any oil or gas well shall be made in accordance with certain provisions of the Texas Administrative Code. 16 TEX. ADMIN. CODE ANN. §3.5(a). "Operations of drilling, deepening, plugging back, or reentering shall not be commenced until the permit has been granted by the commission and the waiting period, if any, has terminated, or authorization has been granted pursuant to subsection (d) of this section." *Id*. at 3.5(c). "An application must be accompanied by any relevant information, form, or certification required by the Railroad Commission or a commission representative necessary to determine

10

compliance with the law." *Id.* Application is defined as a "[r]equest by an organization made either on the prescribed form or electronically pursuant to procedures for electronic filings adopted by [The Railroad Commission of Texas] for a permit to drill, deepen, plug back, or reenter any oil well, gas well, or geothermal resource well. *Id.* at §3.5(b)(1).

The RRC mandates that an application to drill shall be accompanied by a neat, accurate plat. *Id.* at §3.5(h). The plat for the initial well on the lease shall show the entire lease. *Id.* Plats for subsequent wells on a lease shall show at least the lease line nearest the proposed location and the nearest survey/section lines. *Id.* The lease shall be outlined on the plat using either a heavy line or crosshatching. *Id.* at §3.5(h)(1). The plat must include certain information not limited to the following: (A) surface location of the proposed drilling site; (B) perpendicular lines providing the distance in feet from two nearest non-parallel survey/section lines to the surface location; (C) perpendicular lines providing the distance in feet from two nearest non-parallel lease lines to the surface location; and (D) the geographic location information. *Id.* at §3.5(h)(2).

To develop a complete understanding of this Court's ruling, this Court will first apply these legal principles to the lien claims filed against the Frost Bank Lease. At the hearing on November 29, 2007, the Bankruptcy Court heard evidence and argument on objections that were filed against the Frost Bank Lease lien claims. Except in once instance, no party offered testimony explaining and orienting the plats to the Frost Bank Lease. Without objection, the parties relied only on the face of the plats to explain themselves. No testimony appears in the record that the plats actually describe the location of the lease or how they relate to the Frost

11

Bank Lease.  The only evidence before the Court are the lien affidavits themselves, the Frost Bank "Oil and Gas Lease," "Amendment to Oil and Gas Lease," "Memorandum of Oil and Gas Lease,"  and the testimony of Benny Clegg, a project manager for a company in the business of acquiring oil and gas leases.  His testimony was offered by Texas Energy Services, LP, Dorsal Services, Inc., and ProTechnics Division of Core Laboratories, Inc. When asked to review a plat, Clegg testified that he believed the information contained on the plat would enable a person to locate the lease.  Clegg was also asked to review a Texas Railroad Commission Form W-1 ("Form W-1").[6]

> Simank:  Now, you were saying the information that would be contained on a W-1; how would  this be important to you to locate the leasehold?  How would you do it?
>
> Clegg:  With this information, which the information again has the producer's name, the lease name, the abstract and survey numbers and also the survey name.  At this time I would take this information, go back to the respective county, in this case being Duval[1], and run real property records to ascertain the lease that was taken from Frost Bank.  And again, the clue would be the survey and abstract numbers.
>
> Simank:  Would that be contained on the real property description?
>
> Clegg:  Yes, sir.

---

[6]  At the hearing, Ronald Simank, counsel for Texas Energy Services, LP and Dorsal Services, Inc., offered a plat and Form W-1 as exhibits in support of the lien affidavits filed by Texas Energy Services, LP and Dorsal Services, Inc. Timothy Dowling, counsel for several Settling Working Interest Claimants, objected to the  exhibits because they were *not attached to or otherwise incorporated as part of the lien affidavits filed in the Duval County records*. The Bankruptcy Court overruled the objection but ultimately found the lien affidavits filed by Texas Energy Services, LP and Dorsal Services, Inc. were invalid.

All of the plats attached to the Frost Bank liens refer to "REICHMANN PETROLEUM CORPORATION FROST BANK LEASE 998.29625 ACRES."  Because an oil and gas lease is considered a conveyance of an interest in real property, the Texas recording statutes mandate that the Frost Bank Lease be recorded with the county clerk in which the property is located and made accessible to the public.  The Frost Bank "Oil and Gas Lease," "Memorandum of Oil and Gas Lease," and "Amendment to Oil and Gas Lease" are included in the record on appeal to this Court.  It is uncontested that the memorandum and amendment thereto are recorded in the official records of Duval County, Texas, at Vol. 394, Pages364-366 and Vol. 418, Pages 186-188, respectively.  The amendment describes the property as being "Five (5) tracts of land totaling 998.29625 acres, more or less, in Duval County, Texas," and provides the survey and abstract information for each tract.  It concludes:  "For a total of 998.29625 acres, more or less, all lying in Duval County Texas, and being part of the acreage describe in that certain Deed from Leila C. Peters, Et Al., to W.R. Peters, Jr. dated April 1, 1952 recorded in Volume 84, Page 164, et seq., of the Deed Records of Duval County, Texas."

The plats also provide the following survey and abstract information – "SURVEY 789 B.S. & F. A-1342."  Although there is no testimony before this Court as to the legal significance of a survey or abstract, throughout the history of land law in Texas, Texas courts have stressed the importance of identifying land as being within a certain league, labor, or survey.  *U.S. Enterprises, Inc. v. Dauley*, 535 S.W.2d 623, 629 (Tex. 1976). The practice is still an important aid to abstractors and title examiners.  *Id.*  In *Reserve Petroleum Co. v.*

*Harp*, 226 S.W.2d 839 (Tex. 1950), the Texas Supreme Court took judicial notice of the long

continued and uniform practice of the Commissioner of the General Land Office of Texas.

> Each survey in every county, as it passes or has passed into private ownership,
> is given an abstract number by the Commissioner of the General Land Office,
> no two surveys in any one county being given the same numbers.  Abstract
> books showing these numbers for the surveys are compiled and copies of the
> books are sent to the Comptroller and to the tax assessors of the counties.  The
> books are supplemented from time to time as portions of surveys are segregated
> or pass into other ownership, but the abstract number that was originally given
> to a survey remains as the abstract number of the survey or of a part of it.  That
> number is never assigned or transferred to any other survey.  As any part of the
> survey is segregated from it or passes into other ownership and evidence of the
> segregation or change of ownership is filed in the Land Office, a new abstract
> number is given to that part of the survey, but the original number continues to
> be the abstract number of what remains of the original survey after a part has
> been segregated.  This process continues as other segregations are made out of
> the survey, a new abstract number being given to the part segregated from the
> survey and the original number remaining as the abstract number of what is left
> of the survey.  Thus always the abstract number originally given to the survey
> continues to be the abstract number of that survey or some part of it.  The
> abstract number first given the survey never applies or belongs to any other
> survey or to any part of any other survey.  *Reserve Petroleum*, 226 S.W.2d at
> 452-53.

Furthermore, the language in the affidavits themselves identify Reichmann Petroleum

Corporation as the mineral property owner and/or operator of the lease.  A person would be

able to use this information to search the alphabetical grantor/grantee cross-index, which is

mandated by statute to be maintained by the county clerk of the county in which the property

is located.

It is uncontested that the Form W-1s attached to certain lien affidavits are drilling

permit applications filed pursuant to procedures adopted by the Texas Railroad Commission.

These forms provide descriptive information as well.  Each Form W-1 indicates the lease

name is "FROST BANK" and lists "REICHMANN PETROLEUM CORP." as the operator. Each form provides the surface location of a certain well by providing the county in which it is located, its distance to the nearest lease line, and the corresponding survey and abstract information. Specifically, the forms list the county as "DUVAL," the survey as "BS&F," and the Abstract No. as "A-1342."

The plats and Form W-1s are created in the regular course of business by operators of oil and gas leases as required by the Texas Railroad Commission. There is no reason this Court should not recognize the reliability of the plats and Form W-1s that the Texas Railroad Commission accepts in issuing drilling permits. The Court finds the information contained in these documents provides an adequate description of the Frost Bank Lease to satisfy section 56.022(a)(4).

The Court applies the same analysis to all of the lien claims that attach either a plat or a plat and Form W-1. All of the plats and Form W-1s before this Court provide the same descriptive information for each respective lease, including the name of the lease, the amount of acreage included in the each lease, the respective survey name and abstract number, the county in which lease be located, and the name of the operator. With the exception of the Hastings-Lopez Lease, all of the oil and gas lease agreements are part of the record on appeal. It is uncontested that each of these lease agreements are filed in the official records of each respective county. It is uncontested that each oil and gas lease agreement provides a sufficient description of the property subject to the lease.

15

## B.    PROPER AFFIDAVIT FORM

Various Settling Working Interest Claimants object that the lien documents filed by certain companies are not in fact affidavits.  As noted above, in order to secure a lien against mineral property, a lien claimant must file an affidavit with the county clerk of the county in which the property is located.  TEX. PROP. CODE ANN. at §56.021(a).  An affidavit is statutorily defined in Texas as a "statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."  TEX. GOV'T CODE ANN. §312.011(1).  The term "sworn" includes that which is "affirmed."  *Id*. at §312.011(16).  This means an affidavit must be sworn to or affirmed before an authorized third party, who must certify that the affiant so swore to or affirmed the statement at issue.  *Guinn v. Bosque County*, 58 S.W.3d 194, 198 (Tex. App. – Waco, 2001).  This certification is known as the "jurat."  *Id*.  Without a jurat, a statement is not an "affidavit."  *Id*.  A mere acknowledgment  that a document was executed for a particular purpose is insufficient.  *Blanco*, 788 F.3d at 792 (citing *Sugarland Business Center, Ltd. v. Norman*, 624 S.W.2d 639, 641 (Tex. App. – Houston [14th Dist] 1981, no writ)); *Crockett v. Sampson*, 439 S.W.3d 355 (Tex. App. – Austin, 1969).

## C.    DATES OF PERFORMANCE AND ITEMIZATION

A mineral lien affidavit must include "the dates of performance or furnishing" as required by §56.022(a)(3) and "an itemized list of amounts claimed" as required by §56.022(a)(5).  Various Settling Working Interest Claimants allege the invoices attached to certain lien affidavits are inadequate because they provide only the dates of the *bills*, not the

16

dates the work was *performed*.  They contend the particular day or days upon which the labor was performed must be provided in the lien affidavit.  They cite *Ball v. Davis*, 18 S.W.2d 1063, 1064 (Tex. 1929).  There, the Texas Supreme Court applied TEX. REV. CIV. STAT. ANN. ART. 5453, which required that an account be itemized.  This statute was repealed in 1983 and is now codified in Chapter 53 of the Texas Property Code, *not* Chapter 56.  Chapter 53 requires that a *mechanics*' lien affidavit include, among other things, "a general statement of the kind of work done and materials furnished by the claimant and, for a clamant other than an original contractor, a statement of each month in which the work was done and materials furnished for which payment is requested."  TEX. PROP. CODE. ANN. §53.054(a)(1).  In *Ball*, the lien claimants, who were paid by the day, filed an affidavit seeking a lien for 78 days of work from June 26, 1926, to December 1, 1926, a period of 157 days "spread through or embraced in 6 different months." *Id*. at 1064.  Another claimant sought a lien for 170 days of labor spread over 207 days in eight months.  *Id*.  The court found neither the affidavit nor the account indicated on what days the labor was performed or when any particular item became due.  The court held "[U]nless the affidavit and account are sufficiently definite to show that labor has been performed, that a sum certain is due therefor, and the date when due, it is insufficient to accomplish the purposes of the statute to show and fix a lien." *Ball*, 18 S.W.2d at 538.

The same argument was made to the El Paso Texas Court of Appeals in *Trevor Rees-Jones, Trustee for Atkins Petroleum Corp. v. Trevor Rees-Jones, Trustee for Apache Services, Inc.*, 799 S.W.2d 463, 467 (Tex. App. – El Paso 1990).  There, the El Paso Court applied

17

Chapter 56 of the Texas Property Code.

> Complaint is made that the affidavits of White Supply do not disclose the dates
> of performance.  In three instances the affidavits give a single date of
> performance and in five instances both a beginning date and ending date are
> given.  This is a clear compliance with the Code Section 56.022(a)(3).  What
> more is desired than the statements 'on or about April 3, 1986' or 'on or about
> April 9, 1986 through May 8, 1986'?  Is that not sufficient for Appellants to
> know if the affidavits were filed within six months of the day the indebtedness
> accrued?  We believe it is.  *Id*. at 467.

As recognized in *Trevor Rees-Jones*, the importance of providing information about dates when work was performed is to determine when the indebtedness accrued.  *Id*.  It is important to determine when the debt accrued to determine whether or not the lien was timely filed.  *Id*.  When the indebtedness accrues is defined by statute.  "The indebtedness for *labor* performed by the day or week accrues at the end of each week during which the labor is performed."  TEX. PROP. CODE ANN. at §56.005(a).  "The indebtedness for *material or services* accrues on the date the material or services were last furnished.  All material or services that a person furnishes for the same land, leasehold interest, oil or gas pipeline, or oil or gas pipeline right-of-way are considered to be furnished under a single contract unless more than six months elapse between the dates the material or services were furnished."  *Id*. at 56.005(b).

The Court acknowledges the precedent established by *Ball v. Davis*. Nevertheless, this Court finds it is more appropriate to rely on *Trevor Rees-Jones* because there, the El Paso Court applied Chapter 56, the statute at issue in this appeal.

### D.   MINERAL SUBCONTRACTOR'S NOTICE

Various Settling Working Interest Claimants contend certain companies are subcontractors who failed to provide notice as required by section 56.021(b), which provides "[N]ot later than the 10th day before the day the affidavit is filed, a mineral subcontractor claiming the lien must serve on the property owner written notice that the lien is claimed." Section 56.022(b) provides that a mineral subcontractor's affidavit must include the name of the person for whom labor was performed or material was furnished or hauled; and a statement that the subcontractor timely served written notice that the lien is claimed on the property owner or the owner's agent, representative, or receiver." *Id*. at 56.022(b).  Section 56.023 provides "[A] mineral subcontractor's notice to the property owner must include the amount of the lien, the name of the person indebted to the subcontractor, and a description of the land, leasehold interest, pipeline, or pipeline right-of-way involved." *Id*. at §56.023.

### E.   UNTIMELY FILINGS

Various Settling Working Interest Claimants contend two of the four lien affidavits filed by a certain company were untimely filed under section 56.021(a), which provides "[N]ot later than six months after the day the indebtedness accrues, a person claiming the lien must file an affidavit with the county clerk of the county in which the property is located." Section 56.005(b) provides, "[T]he indebtedness for material or services accrues on the date the material or services were last furnished.  All materials or services that a person furnishes for the same land, leasehold interest, oil or gas pipeline, or oil or gas pipeline right-of-way are considered to be furnished under a single contract unless more than six months elapse between

19

the dates the materials or services are furnished."

## F.    AFFIDAVITS SIGNED BY ATTORNEYS

Certain Settling Working Interest Claimants challenge the validity of lien claims filed by certain companies because they were filed and verified by attorneys who had no personal knowledge of the facts contained in the affidavit.  In *Energy Fund of America, Inc. v. G.E.T. Service Co.*, 610 S.W.2d 833 (Tex. Civ. App. – Eastland, 1981), *reversed on other grounds*, 616 S.W.32d 184 (Tex. 1981), the court held that an affidavit filed to perfect a lien under Tex. Civ. St. Art. 5473 could be signed by someone on behalf of the claimant.  There, the court upheld a lien affidavit that had been verified by the lien claimant's attorney.  Tex. Civ. St. Art. 5473 was repealed in 1983, and is now codified in Chapter 56.001 to 56.003 of the Texas Property Code.

## III.   THE FROST BANK LEASE LIENS

As explained above, on November 29, 2007, the Bankruptcy Court heard evidence and argument on objections filed against the Frost Bank Lease liens.  On February 15, 20008, the Bankruptcy Court issued an oral ruling validating and invalidating certain lien claims.  On April 14, 2008, the Bankruptcy Court entered a separate order validating the lien claim filed by BJ Services Company, U.S.A.

On appeal, this Court must examine each lien claim individually and determine whether each complies with the statutory requirements of Chapter 56 of the Texas Property Code.  The Court will use the exhibit list admitted at the November 29, 2007, hearing and examine each lien claim in that order.

This Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Aguiluz v. Bayhi*, 528 F.3d 393, 402 (5th Cir. 2008). Mixed questions of fact and law are reviewed de novo. *Bradley v. Ingalls*, 501 F.3d 421, 428 (5th Cir. 2007).

### 1.    K-3 Resources, LP (Exhibit 1)

Various Settling Working Interest Claimants filed objections to K-3 Resources, LP's ("K-3") lien claim with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the lack of a sufficient jurat. The Bankruptcy Court overruled both objections and validated the lien.[7] The Settling Working Interest Claimants appeal.

A plat and Form W-1 are attached to K-3's affidavit. For the reasons explained above, the Court finds these provide a sufficient property description of the Frost Bank Lease to satisfy section §56.022(a)(4). The Bankruptcy Court's ruling that  K-3's lien affidavit provides a sufficient description of the Frost Bank Lease is AFFIRMED.

In the instrument filed by K-3, Brian E. Bro, as Agent and Attorney for K-3, only "affirm[ed]" from personal knowledge that the information contained in the affidavit was true and correct. The instrument concludes with a Notary Public's certification that Mr. Bro

---

[7] In its oral ruling on February 15, 2008, the Bankruptcy Court did not explicitly find that K-3's lien document did or did not contain a sufficient jurat. The Bankruptcy Court held, "[S]o reviewing those that are in the K3 Resources, contains the Railroad Commission information and have surveys in there – and I am not, the jurat issue, I don't believe, is – I'm not satisfied that that invalidates the lien. And so I find that to be okay."

21

"personally appeared" before her and "acknowledged" to her that the document was executed on behalf of K-3.  The Notary Public did not certify that Mr. Bro swore to or affirmed the affidavit before her.  Reading Mr. Bro's statement broadly, the Court finds the instrument filed by K-3 does not contain a sufficient jurat, and is therefore not a valid affidavit.  *See Crockett*, 439 S.W.3d at 360.

The Bankruptcy Court's ruling that K-3 provided a sufficient jurat is REVERSED AND VACATED.  K-3's lien claim is NOT VALID because it did not file a statutorily required affidavit, as required by §56.021(a).

### 2.     Texas Energy Services, LP (Exhibit 5)

Various Settling Working Interest Claimants and Reichmann filed objections to Texas Energy Services, LP's ("Texas Energy") lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court sustained the objections and invalidated the lien.  Texas Energy appeals.

Texas Energy's lien affidavit does not attach a plat, Form W-1, or otherwise describe the Frost Bank Lease. In fact, it makes no reference to the Frost Bank Lease whatsoever.  At most, the lien affidavit refers only to certain wells.  Reference to certain wells alone is not sufficient.  *See Trevor Rees-Jones*, 799 S.W.2d at 463.  The Bankruptcy Court's ruling that Texas Energy's lien affidavit does not provide a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that Texas Energy Services, LP's lien claim against the Frost Bank Lease is NOT VALID is AFFIRMED.

### 3.     Dorsal Services, Inc. (Exhibit 12)

Various Settling Working Interest Claimants and Reichmann filed objections to Dorsal Services, Inc.'s ("Dorsal") lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court sustained the objections and invalidated the lien.     Dorsal appeals.

Dorsal's lien affidavit does not attach a plat, Form W-1, or otherwise describe the Frost Bank Lease. In fact, it makes no reference to the Frost Bank Lease whatsoever.  At most, the lien affidavit refers only to certain wells.  Reference to certain wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463.  The Bankruptcy Court's ruling that Dorsal's lien affidavit does not provide a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that Dorsal Services, Inc.'s lien claim against the Frost Bank Lease is NOT VALID is AFFIRMED.

### 4.     Hermat Oilfield Service, Inc. (Exhibit 17)

Various Settling Working Interest Claimants filed objections to Hermat Oilfield Service, Inc. ("Hermat") lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4), the failure to include the dates of performance under §56.022(a)(3), and the failure to include an itemized list of the amounts claimed under §56.022(a)(5).  The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants appeal

Hermat's lien affidavit attaches an electronic Form W-1 and four plats.  For the reasons explained above, the Court finds these provide a sufficient property description of the Frost

Bank Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that Hermat's lien affidavit provides a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court did not explicitly rule on the other objections.  On the first page of its affidavit, Hermat claims a lien for material and labor " ... itemized on Exhibit 'A' attached hereto...."  Exhibit A describes the services provided as "field salt water disposal" and gives the beginning and ending dates of when the services were provided.  The affidavit also provides invoice numbers and the total amount claimed for each service period.  The Court finds this satisfies sections 56.022(a)(3) and (5).  *See Trevor Rees-Jones*, 799 S.W.2d at 467.

The Bankruptcy Court's ruling that Hermat Oilfield Service, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Frost Bank Lease for $21,171.40 is AFFIRMED.

### 5.    W.L. Flowers Machine & Welding Co., Inc. (Exhibit 21)

Various Settling Working Interest Claimants filed an objection W.L. Flowers Machine & Welding Co., Inc. ("Flowers") lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court overruled the objection and validated the lien.  The Settling Working Interest Claimants appeal.

Two plats are attached to Flowers' lien affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Frost Bank Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that Flowers' lien affidavit provides a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that W.L. Flowers Machine & Welding Co., Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Frost Bank Lease for $3,406.25 is AFFIRMED.

### 6.      Pro Technics Division of Core Laboratories LP (Exhibit 25)

Various Settling Working Interest Claimants filed an objection to Pro Technics Division of Core Laboratories LP's ("Core Labs") lien claims with the Bankruptcy Court. They objected to the adequacy of the property descriptions under §56.022(a)(4). The Bankruptcy Court overruled the objection and validated the liens. The Settling Working Interest Claimants appeal.

A plat and Form W-1 are attached to Core Labs' lien affidavits. For the same reasons explained above, the Court finds these provide a sufficient property description of the Frost Bank Lease to satisfy §56.022(a)(4). The Bankruptcy Court's ruling that Core Labs' lien affidavits provide a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that Pro Technics Division of Core Laboratories LP's lien affidavits comply with Chapter 56 of the Texas Property Code and secure a VALID LIEN on the Frost Bank Lease for $12,927.75 is AFFIRMED.

### 7.      FESCO, Ltd. (Exhibit 29)

Various Settling Working Interest Claimants filed an objection to FESCO, Ltd.'s ("FESCO") lien claim with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4). The Bankruptcy Court overruled the objection and validated the lien. The Settling Working Interest Claimants appeal.

Two plats are attached to FESCO's lien affidavit.  For the reasons explained above, the Court finds these provide a sufficient property description of the Frost Bank Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that FESCO's lien affidavit provides a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that FESCO, Ltd.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Frost Bank Lease for $57,152.14 is AFFIRMED.

### 8.     Alice Southern Equipment Service, Inc. (Exhibit 33)

Various Settling Working Interest Claimants filed an objection to Alice Southern Equipment Service, Inc.'s ("Alice Southern") lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court overruled the objection and validated the lien. The Settling Working Interest Claimants appeal.

Two plats are attached to Alice Southern's lien affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Frost Bank Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that Alice Southern's lien affidavit provides a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that Alice Southern Equipment Service, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Frost Bank Lease for $19,424.18 is AFFIRMED.

### 9.    Air Equipment Rental, Inc. (Exhibit 37)

Various Settling Working Interest Claimants filed an objection to Air Equipment Rental, Inc.'s ("Air Equipment") lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4) and the failure to provide the dates of performance under §56.022(a)(3).  The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants appeal.

A plat and Form W-1 are attached to Air Equipment's lien affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Frost Bank Lease to satisfy §56.022(a)(4). The Bankruptcy Court's ruling that Air Equipment's lien affidavit provides a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court did not explicitly rule on the other objection. The invoices attached to Air Equipment's lien affidavit provide the date the job was *finished*.  The Settling Working Interest Claimants contend these dates are not necessarily the dates the all of the work was *performed*.  There is no testimony in the record that Air Equipment performed work on any dates other than those provided on each invoice.  As such, the Court finds the affidavit provides a sufficient description of the dates of performance to satisfy §56.022(a)(3).  *See Trevor Rees-Jones*, 799 S.W.2d at 467.

The Court holds Air Equipment's lien affidavit complies with Chapter 56 of the Texas Property Code and therefore secures a VALID LIEN on the Frost Bank Lease for $9,500.00.

### 10.    BJ Services Company, U.S.A. (Exhibit 41)

Various Settling Working Interest Claimants filed an objection to  BJ Services Company, U.S.A.'s ("BJ Services") lien claim with the Bankruptcy Court.  They objected to adequacy of the dates of performance under §56.022(a)(3).  The Bankruptcy Court overruled the objection and validated the lien.  The Settling Working Interest Claimants appeal.

The date on the attached invoice is August 21, 2006.  That same date is also described on the face of the affidavit as the "dates of performance" and "Date of Last Work."  There is no testimony in the record that BJ Services did not perform work on August 21, 2006, and there is no testimony that BJ Services performed work on any day other than August 21, 2006. The Court finds the affidavit provides a sufficient description of the dates of performance to satisfy §56.022(a)(3).  *See Trevor Rees-Jones*, 799 S.W.2d at 467.  The Bankruptcy Court's ruling that BJ Services' lien affidavit provides an adequate description of the dates of performance to satisfy §56.022(a)(3) is AFFIRMED.

The Bankruptcy Court's ruling that BJ Services Company, U.S.A.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Frost Bank Lease for $108,576.42 is AFFIRMED.

### 11.    Yazoo Enterprises, Inc. (Exhibit 45)

Various Settling Working Interest Claimants and Reichmann filed objections to Yazoo Enterprises, Inc.'s ("Yazoo") lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court sustained the objections and invalidated the lien.  Yazoo appeals.

28

Yazoo's lien affidavit does not attach a plat, Form W-1, or otherwise describe the Frost Bank Lease. In fact, it makes no reference to the Frost Bank Lease whatsoever. At most, the lien affidavit refers only to certain wells. Reference to certain wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Yazoo's lien affidavit does not provide a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that Yazoo Enterprises, Inc.'s lien claim against the Frost Bank Lease is NOT VALID is AFFIRMED.

**12.     Strata Control Services, Inc. (Exhibit 49)**

Various Settling Working Interest Claimants and Reichmann filed objections to Strata Control Services, Inc.'s ("Strata") lien claim with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4). The Bankruptcy Court sustained the objections and invalidated the lien. Strata appeals.

Strata's lien affidavit does not attach a plat, Form W-1, or otherwise describe the Frost Bank Lease. In fact, it makes no reference to the Frost Bank Lease whatsoever. At most, the lien affidavit refers only to certain wells. Reference to certain wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Strata's lien affidavit does not provide a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that Strata Control Services, Inc.'s lien claim against the Frost Bank Lease is NOT VALID is AFFIRMED.

## IV.   THE PEAL RANCH LEASE LIENS

On March 17, 2008, the Bankruptcy Court heard evidence and argument on objections to the Peal Ranch Lease liens.  No testimony was offered at the hearing.  The only evidence before the Bankruptcy Court were the lien affidavits themselves and the  Peal Ranch "Oil and Gas Lease" and "Memorandum of Oil and Gas Lease," which are part of the appellate record before this Court.  It is uncontested that the "Memorandum of Oil and Gas Lease" is recorded in the official records of Duval County, Texas, at Vol. 350, Pages 558-561.   The memorandum describes the property as being 1,887.65 acres of land situated in Duval County, Texas, described as follows:

TRACT ONE:     All of the J.B. Peal Survey No. 390, Abstract No. 1768, containing 561.0 acres, more or less.

TRACT TWO:     All of J.B. Peal Survey No. 790, Abstract No. 1770, containing 327.5 acres, more or less.

TRACT THREE:   All of J. Guzman Survey No. 790, Abstract No. 1913, containing 327.5 acres, more or less.

TRACT FOUR:    All of the J.B. Peal Survey No. 792, Abstract No. 1771, containing 326.5 acres, more or less.

TRACT FIVE:    All of J. Guzman Survey No. 792, Abstract No. 1912, containing 326.5 acres, more or less.

TRACT SIX:     All of Survey No. 733, Abstract No. 764, containing 18.65 acres, more or less.

All located in Duval County, Texas, containing 1,887.65 acres of land, more or less, and being part of that certain acreage identified as First Tract in that certain Mineral and Royalty Deed dated July 1, 1999 from Clarence Johnstone, Trustee to James W. Collins, Trustee recorded in Volume 292, Page 15 of the Official Records of Duval County, Texas.

Each plat and Form W-1 attached to the Peal Ranch liens refer to the Peal Ranch Lease and at least one of the survey and abstract numbers referenced in the property description contained in the "Memorandum of Oil and Gas Lease."

On April 29, 2008, the Bankruptcy Court entered an order validating and invalidating certain liens. This Court will use the exhibit list admitted at the March 17, 2008, hearing and examine each lien claim in that order.

### 1.     Texas Energy Services, LP (Exhibit 1)

Certain Settling Working Interest Claimants, Reichmann, and Richman Oil Corporation filed objections to Texas Energy's lien claim with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4). The Bankruptcy Court sustained the objections and invalidated the lien. Texas Energy appeals.

Texas Energy's lien affidavit does not attach a plat, Form W-1, or otherwise describe the Peal Ranch Lease. In fact, it makes no reference to the Peal Ranch Lease whatsoever. At most, the lien affidavit refers only to certain wells. Reference to certain wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Texas Energy's lien affidavit does not provide a sufficient description of the Peal Ranch Lease is AFFIRMED.

The Bankruptcy Court's ruling that Texas Energy Services, LP's lien claim against the Peal Ranch Lease is NOT VALID is AFFIRMED.

### 2.    Dorsal Services, Inc. (Exhibit 2)

Certain Settling Working Interest Claimants, Reichmann, and Richman Oil Corporation filed objections to Dorsal's lien claim with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4). The Bankruptcy Court sustained the objections and invalidated the lien. Dorsal appeals.

Dorsal's lien affidavit does not attach a plat, Form W-1, or otherwise describe the Peal Ranch Lease. In fact, it makes no reference to the Peal Ranch Lease whatsoever. At most, the lien affidavit refers only to certain wells. Reference to certain wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Dorsal's lien affidavit does not provide a sufficient description of the Peal Ranch Lease is AFFIRMED.

The Bankruptcy Court's ruling that Dorsal Services, Inc.'s lien claim against the Peal Ranch Lease is NOT VALID is AFFIRMED.

### 3.    Collinsworth Well Treating, Inc. (Exhibit 3)

Certain Settling Working Interest Claimants, Reichmann, and Richman Oil Corporation filed objections to Collinsworth's lien claim with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4). The Bankruptcy Court sustained the objection and invalidated the lien. Collinsworth appeals.

Collinsworth's lien affidavit does not attach a plat, Form W-1, or otherwise describe the Peal Ranch Lease. In fact, it makes no reference to the Peal Ranch Lease whatsoever. At most, the lien affidavit refers only to certain wells. Reference to certain wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that

32

Collinsworth's lien affidavit does not provide a sufficient description of the Peal Ranch Lease is AFFIRMED.

The Bankruptcy Court's ruling that Collinsworth Well Treating, Inc.'s lien claim against the Peal Ranch Lease is NOT VALID is AFFIRMED.

### 4.    K-3 Resources, LP (Exhibit 4)

Certain Settling Working Interest Claimants and Richman Oil Corporation filed objections to K-3 Resources, LP's ("K-3") lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4) and the lack of a sufficient jurat.  The Bankruptcy Court overruled the objections and validated the lien.[8]  The Settling Working Interest Claimants and Richman Oil Corporation appeal.

A plat and Texas Railroad Commission Form W-1 are attached to K-3's affidavit.  For the reasons explained above, the Court finds these provide a sufficient property description of the Peal Ranch Lease to satisfy section §56.022(a)(4).  The Bankruptcy Court's ruling that K-3's lien affidavit provides a sufficient description of the Peal Ranch Lease is AFFIRMED.

In the instrument filed by K-3, Brian E. Bro, as Agent and Attorney for K-3, only "affirm[ed]" from personal knowledge that the information contained in the affidavit was true and correct.  The instrument concludes with a Notary Public's certification that Mr. Bro "personally appeared" before her and "acknowledged" to her that the document was executed

---

[8]  At the March 17, 2008, hearing the Bankruptcy Court held, "[a]nd I'm satisfied that the language of these, that the notarization and the language are sufficient to create the affidavit. I'm not going to – that form requirement, to me, is a technicality that I don't believe that Texas state law would require.  So that will not blow that particular affidavit."

on behalf of K-3.  The Notary Public did not certify that Mr. Bro swore to or affirmed the affidavit before her.  Reading Mr. Bro's statement broadly, the Court finds the instrument filed by K-3 does not contain a sufficient jurat, and is therefore not a valid affidavit.  *See Crockett*, 439 S.W.3d at 360.  The Bankruptcy Court's ruling that K-3 provided a sufficient jurat is REVERSED AND VACATED.  K-3's lien claim is NOT VALID because it did not file a statutorily required affidavit, as required by §56.021(a).

### 5.      Alice Southern Equipment Service, Inc. (Exhibit 5)

Certain Settling Working Interest Claimants and Richman Oil Corporation filed objections to Alice Southern's lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4) and the affiant's failure to include the property description information in the sworn portion of the affidavit.  The Bankruptcy Court overruled both objections and validated the lien.  The Settling Working Interest Claimants and Richman Oil Corporation appeal.

Five plats are attached to Alice Southern's affidavit.  For the reasons explained above, the Court finds these provide a sufficient property description of the Peal Ranch Lease to satisfy section §56.022(a)(4).  The Bankruptcy Court's ruling that Alice Southern's lien affidavit provides a sufficient description of the Peal Ranch Lease is AFFIRMED.

The Bankruptcy Court did not explicitly rule on the other objection.  On the second page of Alice Southern's affidavit, the notary public certifies that Ivan Shay Pierce, Jr., President of Alice Southern Equipment Service, Inc., swore " ... that the facts set out above in Paragraph 2.2 are true and correct; that the material and labor as itemized in the invoices

comprising Exhibit 'A' is within the knowledge of the Affiant, just and true; and, that the amounts claimed therein are due ..." On the third page of the affidavit, the same notary public provides a second jurat which states "SUBSCRIBED AND SWORN TO BEFORE ME by the said Ivan Shay Pierce, Jr...." Paragraph 2.2 of the affidavit provides the amount claimed, the dates of performance and itemization as reflected in the attached invoices, and the names and addresses of the leasehold interest owner and claimant. Paragraph 2.2 does not provide a description of the Peal Ranch Lease. Paragraph 1 and 3 of the lien affidavit describe the leasehold interest as that which is described on the attached Exhibit 'B,' which consists of five plats. The Court finds the second jurat indicates the entire document, which includes Paragraphs 1, 3, and Exhibit B, was sworn to before the notary public. As such, the Court finds the property description is included within the sworn portion of the affidavit.

The Court AFFIRMS the Bankruptcy Court's ruling that Alice Southern Equipment Service, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Peal Ranch Lease for $47,124.31.

### 6.    W.L. Flowers Machine & Welding Co., Inc. (Exhibit 6)

Certain Settling Working Interest Claimants and Richman Oil Corporation filed objections to Flowers' lien claim with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the affiant's failure to include the property description information in the sworn portion of the affidavit. The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants and Richman Oil Corporation appeal.

Four plats are attached to Flowers' lien affidavit.  For the reasons explained above, the Court finds these provide a sufficient property description of the Peal Ranch Lease to satisfy section §56.022(a)(4).  The Bankruptcy Court's ruling that Flowers' lien affidavit provides a sufficient description of the Peal Ranch Lease is AFFIRMED.

The Bankruptcy Court does not explicitly rule on the other objection.  On the second page of Flowers' affidavit, the notary public certifies that Gary Flowers, President of W.L. Flowers Machine & Welding Co., Inc., swore " ... that the facts set out above in Paragraph 2.2 are true and correct; that the material and labor as itemized and the invoices comprising Exhibit 'A' is within the knowledge of the Affiant, just and true; and, that the amounts claimed therein are due ..."  On the third page of the affidavit, the same notary public provides a second jurat which states "SUBSCRIBED AND SWORN TO BEFORE ME by the said Gary Flowers...."   Paragraph 2.2 of the affidavit provides the amount claimed, the dates of performance and itemization as reflected in the attached invoices, and the names and addresses of the leasehold interest owner and claimant.  Paragraph 2.2 does not provide a description of the Peal Ranch Lease.  Paragraph 1 and 3 of the lien affidavit describe the leasehold interest as that which is described on the attached Exhibit 'B,' which consists of four plats.  The Court finds the second jurat indicates the entire document, which includes Paragraphs 1, 3, and Exhibit B, was sworn to before the notary public. As such, the Court finds the property description is included within the sworn portion of the affidavit.

The Court AFFIRMS the Bankruptcy Court's ruling that W.L. Flowers Machine & Welding Co., Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and

secures a VALID LIEN on the Peal Ranch Lease for $19,379.39.

**7.      Hermat Oilfield Service, Inc. (Exhibit 7)**

Certain Settling Working Interest Claimants and Richman Oil Corporation filed objections to Hermat's lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4), the failure to include the dates of performance under §56.022(a)(3), the failure to include an itemized list of the amounts claimed under §56.022(a)(5), and the affiant's failure to include the property description information in the sworn portion of the affidavit.  The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants and Richman Oil Corporation appeal.

Four plats and an electronic Texas Railroad Commission Form W-1 are attached to Hermat's affidavit.  For the reasons explained above, the Court finds these provide a sufficient property description of the Peal Ranch Lease to satisfy section §56.022(a)(4).   The Bankruptcy Court's ruling that Hermat's lien affidavit provides a sufficient description of the Peal Ranch Lease is AFFIRMED.

In Paragraph 2.2 of its affidavit, Hermat provides "[T]he items of the claim and the dates of performance or furnishings of material and labor are set out on Exhibit 'A' attached hereto."  Exhibit A describes the services provided as "field salt water disposal" and gives the beginning and ending dates of when the services were provided.  The affidavit also provides the invoice numbers and the total amount claimed for each service period.  The Court finds this satisfies sections 56.022(a)(3) and (5).  *See Trevor Rees-Jones*, 799 S.W.2d at 467.

On the second page of the affidavit Kenneth M. Talley swears " ... that the facts set out above in Paragraph 2.2 are true and correct; that the material and labor as itemized and Exhibit 'A' is within the knowledge of the Affiant, just and true; and, that the amounts claimed therein are due ..."  On the third page of the affidavit, a notary public provides a jurat which states, "ON SUBSCRIBED AND SWORN TO BEFORE ME on this 2nd day of March 2007."  Paragraph 2.2 does not provide a description of the Peal Ranch Lease. However, paragraphs 1 and 3 of the lien affidavit describe the leasehold interest as that which is described on the attached Exhibit 'B.' Exhibit B consists of several plats and Form W-1s, which this Court has already found provide a sufficient property description.  Reading the affidavit broadly, this Court finds the jurat shows that the entire document, which includes Exhibit B, was sworn to before a notary public.  As such, this Court finds the property

The Bankruptcy Court's ruling that Hermat Oilfield Service, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Peal Ranch Lease for $18,871.90 is AFFIRMED.

### 8.   FESCO, Ltd. (Exhibit 8)

Certain Settling Working Interest Claimants and Richman Oil Corporation filed objections to FESCO's lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4) and the affiant's failure to include the property description information in the sworn portion of the affidavit.  The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants and Richman Oil Corporation appeal.

38

Three plats are attached to FESCO's lien affidavit.  For the reasons explained above, the Court finds these provide a sufficient property description of the Peal Ranch Lease to satisfy section §56.022(a)(4).  The Bankruptcy Court's ruling that FESCO's lien affidavit provides a sufficient description of the Peal Ranch Lease is AFFIRMED.

On the second page of FESCO's affidavit, the notary public certifies that Steven F. Findley, President of FESCO Management, L.L.C., swore " ... that the facts set out above in Paragraph 2.2 are true and correct; that the material and labor as itemized and the invoices comprising Exhibit 'A' is within the knowledge of the Affiant, just and true; and, that the amounts claimed therein are due ..."  On the third page of the affidavit, the same notary public provides a second jurat which states "SUBSCRIBED AND SWORN TO BEFORE ME by the said Steven F. Findley...."   Paragraph 2.2 of the affidavit provides the amount claimed, the dates of performance and itemization as reflected in the attached invoices, and the names and addresses of the leasehold interest owner and claimant.  Paragraph 2.2 does not provide a description of the Peal Ranch Lease.  Paragraph 1 and 3 of the lien affidavit describe the leasehold interest as that which is described on the attached Exhibit 'B,' which consists of three plats.  The Court finds the second jurat indicates the entire document, which includes Paragraphs 1, 3, and Exhibit B, was sworn to before the notary public. As such, the Court finds the property description is included within the sworn portion of the affidavit.

The Court AFFIRMS the Bankruptcy Court's ruling that FESCO, Ltd.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Peal Ranch Lease for $39,818.53.

9.     **Rathole Drilling, Inc. (Exhibit 9)**

The Settling Working Interest Claimants and Richman Oil Corporation filed objections to Rathole's lien claim with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court overruled the objection and validated the lien.  The Settling Working Interest Claimants and Richman Oil Corporation appeal.

Several plats and Texas Railroad Commission Form W-1s are attached to Rathole's lien affidavit.  For the reasons explained above, the Court finds the lien affidavit provides a sufficient property description of the Peal Ranch Lease to satisfy section 56.022(a)(4).

The Bankruptcy court's ruling that Rathole Drilling, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Peal Ranch Lease for $32,702.08 is AFFIRMED.

10.    **Air Equipment Rental, Inc. (Exhibit 10)**

The Settling Working Interest Claimants and Richman Oil Corporation filed objections to Air Equipment's lien claims with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4), the affiant's failure  to include the name of the property owner in the sworn portion of the affidavit, the failure to comply with the notice requirements required of subcontractors under §56.022(b), and the failure to provide the dates of performance under §56.022(a)(3).  The Bankruptcy Court overruled the objections and validated  the liens. The Settling Working Interest Claimants and Richman Oil Corporation appeal.

Each lien affidavit filed by Air Equipment attaches a plat and Form W-1. For the reasons explained above, the Court finds these provide a sufficient property description of the Peal Ranch Lease to satisfy section §56.022(a)(4). The Bankruptcy Court's ruling that Air Equipment's lien affidavits provide a sufficient description of the Peal Ranch Lease is AFFIRMED.

Section 56.022(a)(1) provides "[T]he lien affidavit must include the name of the mineral property owner involved, *if known*." *Id*. at 56.022(a)(1). On page five of each lien affidavit filed by Air Equipment, the notary public certifies that James M. Solomon, Vice-President of Administration, swore "...that the facts set out in Exhibit 'A' and 'B' are within the knowledge of the affiant, just and true, and that the amount claimed therein are due ..." The same notary public certifies a second time that James M. Solomon "acknowledged" that he executed the affidavit.

Exhibits A consist of invoices, which indicate "Reichmann Pet." is the company being charged. Exhibits B consist of invoices, plats, and Form W-1s. The billing addresses on the invoices indicate they are to be sent to "Reichmann Petroleum Corp." The plats make reference to "REICHMANN PETROLEUM CORPORATION PEAL RANCH LEASE," and the Form W-1s indicate "REICHMANN PETROLEUM CORP." is the Operator. The Court is satisfied that this information is sufficient to satisfy §56.022(a)(1).

The Settling Working Interest Claimants and Richman Oil Corporation argue the invoices attached to Air Equipment's lien affidavits provide only the dates various jobs were *finished*, not necessarily the dates the work was *performed*. There is no testimony before the

court that Air Equipment performed work on any dates other than those provided on each invoice.   The Court finds the invoices provide the dates of performance to satisfy §56.022(a)(3).  *See Trevor Rees-Jones*, 799 S.W.2d at 467.

Lastly, the Settling Working Interest Claimants contend Air Equipment was a "subcontractor" that did not provide any proof that it complied with the owner notice requirements of sections 56.022(b)(2) and 56.023 of the Texas Property Code.  The Bankruptcy Court found Air Equipment's lien affidavits satisfied both statutory requirements but did not explain its ruling.  This Court REMANDS this matter to the Bankruptcy Court for written findings of fact and conclusions of law explaining the basis for its ruling.

The Bankruptcy Court's ruling that Air Equipment Rental, Inc.'s lien affidavits comply with Chapter 56 of the Texas Property Code and secure a valid lien on the Peal Ranch Lease is REVERSED and REMANDED.

### 11.    BJ Services Company, U.S.A.

The Settling Working Interest Claimants and Richman Oil Corporation filed objections to BJ Services' lien claim with the Bankruptcy Court.  They objected to the failure to include the dates of performance under §56.022(a)(3).  Specifically, they argued that the invoices attached to the affidavit provide only the dates of the *bills*, not the dates the work was *performed*.  The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants and Richman Oil Corporation appeal.

The face of BJ Services' affidavit describes the "dates of performance" and "Date of Last Work" as December 5, 2006.  There is no testimony in the record that BJ Services did

42

not perform work on December 5, 2006, and there is no testimony that BJ Services performed work on any day other than December 5, 2006. The Court finds the affidavit provides a sufficient description of the dates of performance to satisfy §56.022(a)(3). *See Trevor Rees-Jones*, 799 S.W.2d at 467. The Bankruptcy Court's ruling that BJ Services' lien affidavit provides an adequate description of the dates of performance to satisfy §56.022(a)(3) is AFFIRMED.

The Bankruptcy Court's ruling that BJ Services Company, U.S.A.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Peal Ranch Lease for $108,051.69 is AFFIRMED.

## V.   LIEN CLAIM OBJECTIONS HEARD ON AUGUST 26, 2008

On August 26, 2008, the Bankruptcy Court heard evidence and argument on objections to additional lien claims filed on several leases, including the Peal Ranch Lease located in Duval County, Texas, the Fernando Garza Deep Lease located in Zapata County, Texas, the Hastings-Lopez Lease located in Starr County, Texas, and the Pipes Lease located in Hill County, Texas. The Peal Ranch Lease, Fernando Garza Deep Lease, and the Pipes Lease are part of the record on appal.

The same Peal Ranch Lease described on page 31 of this order is part of the evidentiary record developed at the August 26, 2008, hearing. Each plat and Form W-1 attached to the Peal Ranch liens heard at this hearing refer to the Peal Ranch Lease and at least one of the survey and abstract numbers referenced in the property description contained in the Peal Ranch "Memorandum of Oil and Gas Lease." In some instances, the liens provide the

43

recording information of the Memorandum itself.

It is uncontested that the Fernando Garza Deep "Memorandum of Oil and Gas Lease" is recorded in the official records of Zapata County, Texas, at Vol. 751, Pages 669-675.  The memorandum describes the property as follows:

> 1103 acres of land, more or less, a part of the Charco de la India Grant, Abstract 74, Original Grantee A.B. Pereda, and described by metes and bounds as follows [a metes and bounds description follows] ...

> Same being the land as set aside by the heirs of Gregorio Garza Flores by partition deed to Fernando Garza dated July 14, 1939, and of record in Vo. 43, pages 371-8, of the Deed Records of Zapata County, Texas.

Each plat attached the Fernando Garza Deep liens heard at the August 26, 2008, hearing refer to "REICHMANN PETROLEUM CORPORATION FERNANDO GARZA DEEP (F/K/A MADRIGAL DEEP) LEASE 1103 ACRES" and " 'CHARCO de la INDIA' GRANT ANDRES BANTISTA PAREDA ORGINAL GRANTEE A-74." The plats also provide "1103 Acres Recorded in Vol. 43, Pgs. 371-378."

It is uncontested that the Pipes "Paid Up Oil and Gas Lease" is recorded in the official records of Hill County, Texas, at Book 1277, Pages 568-574.  The lease agreement describes the property as follows:

> Being 144.000 acres, more or less, located in the Robinson T. Smith Survey, A-815 Hill County, Texas, being described in Warranty Deed dated June 28, 1984 by and between Lillie Pearl Pipes to Landrum Pipes, Roberta Bowman and Jack Pipes, recorded in Volume 673, Page 429 of the Official Public Records.

Each plat attached to the Pipes Lease liens heard at the August 26, 2008, hearing refer to "PIPES LEASE" and "R.T. SMITH A-815." Each Form W-1 indicates the lease name is

"PIPES," the Survey name is "SMITH, R T," and the Abstract No. is "A-815."

The Bankruptcy Court also heard the testimony of five witnesses.  Benny Clegg was called on behalf of Texas Energy Services, LP and Dorsal Services, Inc.  He testified that the property descriptions contained in the lien affidavits filed by Texas Energy Services, LP and Dorsal Services, Inc. provide the means to identify the Fernando Garza Deep Lease with reasonable certainty. Clegg also explained how he would identify the Fernando Garza Deep Lease with the information contained in the affidavits.

Maurice Amidei was called on behalf of Bruington Engineering, Ltd.  Amidei has been a practicing attorney and judge in the State of Texas for over fifty years, and he has been involved in many oil and gas matters.  He testified that in his experience, a property description is sufficient to fix a lien if it provides information that would enable a person to identify and access the documents on file with the Texas Railroad Commission.

The testimony of Randy Snyder and Curtis Horne were called on behalf of Schlumberger Technology Corporation, which is not a party to this appeal.  The testimony of Chris Beard was offered on behalf of Weatherford International, Inc., which is not a party to this appeal.  The Bankruptcy Court did not issue a ruling on these lien claims.  None of the parties to this appeal rely on the testimony of Snyder, Horne, or Beard in support of their lien claims.

On October 2, 2008, the Bankruptcy Court entered an order validating and invalidating certain liens.  Various parties appeal.  This Court will use the exhibit list admitted at the August 26, 2008, hearing and examine each lien claim in that order.

### 1.    Bruington Engineering, Ltd. (Exhibit 1)

Certain Settling Working Interest Claimants filed objections to Bruington Engineering, Ltd.'s ("Bruington") lien claim against the Peal Ranch Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit. The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants appeal.

The Bankruptcy Court did not explain its ruling on this specific property description objection. However, on the first page of its affidavit, Bruington provides:

> [T]he mineral leasehold interests for which the labor and services were performed and to which the lien applies are all mineral interests owned now or at any relevant time by Reichmann Petroleum Corp. in the County of Duval, State of Texas, including but not by way of limitation, those described and recorded as follows: Volume 434, Pages 483 through 485; Volume 427, Pages 141 through 153; Volume 418, Pages 186 through 188; Volume 413, Pages 150 through 156, and Volume 350, Pages 558 through 561; of the official deed or mineral interest records of Duval County, Texas.

The "Memorandum of Oil and Gas Lease" for the Peal Ranch Lease is part of the record on appeal. The face of the document verifies that it [the Memorandum] is filed in Volume 350, Pages 558-561 of the records of Duval County, Texas. This recording information is included on the face of the lien affidavit. A description of an oil and gas lease given by providing the place of recording in the county records is a sufficient description. *Trevor Rees-Jones*, 799 S.W.2d at 463; *Youngstown*, 403 F.2d at 144. The Court finds this property description satisfies §56.022(a)(4) of the Texas Property Code.

46

The Bankruptcy Court did not explain why it overruled the attorney-signed affidavit objection.  The Court finds this objection has no merit.  *Energy Fund of America, Inc. v. G.E.T. Service Co.*, 610 S.W.2d 833 (Tex. Civ. App. – Eastland, 1981).

The Bankruptcy Court's ruling that Bruington Engineering, Ltd.  has a VALID LIEN against the Peal Ranch Lease in the amount of $189,452.59 is AFFIRMED.

### 2.      Beck Bros., Inc. (Exhibit 2)

Certain Settling Working Interest Claimants filed objections to Beck Bros., Inc.'s ("Beck Bros.") lien claim against the Peal Ranch Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit.  The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants appeal.

The Bankruptcy Court did not explain its ruling on this specific property description objection.  However, on the first page of its affidavit Beck provides:

> [T]he mineral leasehold interests for which the labor and services were performed and to which the lien applies are all mineral interests owned now or at any relevant time by Reichmann Petroleum Corp. in the County of Duval, State of Texas, including but not by way of limitation, those described and recorded as follows: Volume 434, Pages 483 through 485; Volume 427, Pages 141 through 153; Volume 418, Pages 186 through 188; Volume 413, Pages 150 through 156, and Volume 350, Pages 558 through 561; of the official deed or mineral interest records of Duval County, Texas.

The "Memorandum of Oil and Gas Lease" for the Peal Ranch Lease is part of the record on appeal.  The face of the document verifies that it [the Memorandum] is filed in

Volume 350, Pages 558-561 of the records of Duval County, Texas.  This recording information is included on the face of the lien affidavit.  A description of an oil and gas lease given by providing the place of recording in the county records is a sufficient description. *Trevor Rees-Jones*, 799 S.W.2d at 463; *Youngstown*, 403 F.2d at 144. The Court finds this property description satisfies §56.022(a)(4) of the Texas Property Code.

The Bankruptcy Court did not explain why it overruled the attorney-signed affidavit objection.  The Court finds this objection has no merit.  *Energy Fund of America, Inc. v. G.E.T. Service Co.*, 610 S.W.2d 833 (Tex. Civ. App. – Eastland, 1981).

The Bankruptcy Court's ruling that Beck Bros., Inc. has a VALID LIEN against the Peal Ranch Lease in the amount of $97,546.53 is AFFIRMED.

### 3.        Double Rafter H Construction Co., LLC (Exhibit 3)

Certain Settling Working Interest Claimants filed objections to Double Rafter H Constructions Co., LLC's ("Double Rafter") lien claim against the Peal Ranch Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit.  The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants appeal.

The Bankruptcy Court did not explain its ruling on this specific property description objection.  However, on the first page of its affidavit Double Rafter provides:

> [T]he mineral leasehold interests for which the labor and services were performed and to which the lien applies are all mineral interests owned now or at any relevant time by Reichmann Petroleum Corp. in the County of Duval,

48

State of Texas, including but not by way of limitation, those described and recorded as follows: Volume 434, Pages 483 through 485; Volume 427, Pages 141 through 153; Volume 418, Pages 186 through 188; Volume 413, Pages 150 through 156, and Volume 350, Pages 558 through 561; of the official deed or mineral interest records of Duval County, Texas.

The "Memorandum of Oil and Gas Lease" for the Peal Ranch Lease is part of the record on appeal. The face of the document verifies that it [the Memorandum] is filed in Volume 350, Pages 558-561 of the records of Duval County, Texas. This recording information is included on the face of the lien affidavit. A description of an oil and gas lease given by providing the place of recording in the county records is a sufficient description. *Trevor Rees-Jones*, 799 S.W.2d at 463; *Youngstown*, 403 F.2d at 144. The Court finds this property description satisfies §56.022(a)(4) of the Texas Property Code.

The Bankruptcy Court did not explain why it overruled the attorney-signed affidavit objection. The Court finds this objection has no merit. *Energy Fund of America, Inc. v. G.E.T. Service Co.*, 610 S.W.2d 833 (Tex. Civ. App. – Eastland, 1981).

The Bankruptcy Court's ruling that Double Rafter H Construction Co., LLC has a VALID LIEN against the Peal Ranch Lease in the amount of $176,090.68 is AFFIRMED.

### 4.    Petron Industries, Inc. (Exhibit 4)

Certain Settling Working Interest Claimants filed objections to Petron Industries, Inc. ("Petron") lien claim against the Peal Ranch Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit. The Bankruptcy Court overruled the objections and validated the lien. The Settling

Working Interest Claimants appeal.

The Bankruptcy Court did not explain its ruling on this specific property description objection.  However, on the first page of its affidavit Petron provides:

> [T]he mineral leasehold interests for which the labor and services were performed and to which the lien applies are all mineral interests owned now or at any relevant time by Reichmann Petroleum Corp. in the County of Duval, State of Texas, including but not by way of limitation, those described and recorded as follows: Volume 434, Pages 483 through 485; Volume 427, Pages 141 through 153; Volume 418, Pages 186 through 188; Volume 413, Pages 150 through 156, and Volume 350, Pages 558 through 561; of the official deed or mineral interest records of Duval County, Texas.

The "Memorandum of Oil and Gas Lease" for the Peal Ranch Lease is part of the record on appeal.  The face of the document verifies that it [the Memorandum] is filed in Volume 350, Pages 558-561 of the records of Duval County, Texas.  This recording information is included on the face of the lien affidavit.  A description of an oil and gas lease given by providing the place of recording in the county records is a sufficient description. *Trevor Rees-Jones*, 799 S.W.2d at 463; *Youngstown*, 403 F.2d at 144. The Court finds this property description satisfies § 56.022(a)(4) of the Texas Property Code.

The Bankruptcy Court did not explain why it overruled the attorney-signed affidavit objection. The Court finds this objection has no merit.  *Energy Fund of America, Inc. v. G.E.T. Service Co.*, 610 S.W.2d 833 (Tex. Civ. App. – Eastland, 1981).

The Bankruptcy Court's ruling that Petron Industries, Inc. has a VALID LIEN against the Peal Ranch Lease in the amount of $27,198.61 is AFFIRMED.

### 5.      ProTechnics Division of Core Laboratories, LP (Exhibit 5)

Certain Settling Working Interest Claimants filed objections to Pro Technics Division of Core Laboratories, LP ("Core Labs") lien claims against the Peal Ranch Lease with the Bankruptcy Court. They objected to the adequacy of the property descriptions under §56.022(a)(4) and the untimely filing of two lien claims. The Bankruptcy Court overruled the objections and validated the liens. The Settling Working Interest Claimants appeal.

A plat and Form W-1 are attached to Core Labs' lien affidavits. For the reasons explained above, the Court finds these provide a sufficient property description of the Peal Ranch Lease to satisfy §56.022(a)(4). The Bankruptcy Court's ruling that Core Labs' lien affidavits provide a sufficient description of the Peal Ranch Lease is AFFIRMED.

The Bankruptcy Court did not explain its ruling on the untimely filing objection. Core Labs has four lien affidavits all of which were filed on January 30, 2007, in the official records of Duval County, Texas. The invoices attached to the affidavits show that the first services and materials were supplied by Core Labs to the Peal Ranch Lease on May 30, 2006. The last services and materials were supplied on October 8, 2006. This demonstrates the services and materials were provided within a six month period.

Section 56.005(b) provides, "[T]he indebtedness for material or services accrues on the date the material or services were last furnished. All materials or services that a person furnishes for the same land, leasehold interest, oil or gas pipeline, or oil or gas pipeline right-of-way are considered to be furnished under a single contract unless more than six months elapse between the dates the materials or services are furnished."

The Court finds the materials and services provided by Core Labs were furnished under a single contract on October 8, 2006, the date the materials and services were last furnished. The lien affidavits filed on January 30, 2007, are within six months of this date and therefore were timely filed.

The Bankruptcy Court's ruling that ProTechnics Division of Core Laboratories, LP has a VALID LIEN against the Peal Ranch Lease in the amount of $20,981.23 is AFFIRMED.

### 6.    BJ Services Company, U.S.A. (Exhibit 7)

Certain Settling Working Interest Claimants filed objections to BJ Services Company, U.S.A.'s ("BJ Services") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the failure to include the dates of performance under §56.022(a)(3). The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants appeal.

A plat is attached to BJ Services' lien affidavit. For the reasons explained above, the Court finds this provide a sufficient property description of the Fernando Garza Deep Lease to satisfy section §56.022(a)(4). The Bankruptcy Court's ruling that BJ Services' lien affidavit provides a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The face of the affidavit describes the "dates of performance" and "Date of Last Work" as November 7, 2006. Paragraph six of the affidavit provides "[A]ttached hereto, marked Exhibit 'A' and incorporated herein by this reference is an itemized statement of account showing thereon the materials furnished and labor performed by Claimant *on the dates* and

in the amounts shown thereon." The dates on the attached invoices are November 7, 2006, and December 8, 2006. No evidence has been presented to this Court to challenge the validity of these dates as being the dates the work was performed. As such, this Court finds the lien affidavit includes the dates of performance and satisfies section 56.022(a)(3). *See Trevor-Rees Jones*, 799 S.W.2d at 467.

The Bankruptcy Court's ruling that BJ Services Company, U.S.A. has a VALID LIEN against the Fernando Garza Deep Lease in the amount of $69,193.31 is AFFIRMED.

### 7.    Bruington Engineering, Ltd. (Exhibit 8)

Certain Settling Working Interest Claimants filed objections to Bruington Engineering, Ltd.'s ("Bruington") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit. The Bankruptcy Court sustained the property description objection and invalidated the lien. Bruington appeals.

Bruington's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Fernando Garza Deep Lease. In fact, it makes no reference to any lease whatsoever. At most, the lien affidavit refers only to certain wells. Reference to wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Bruington's lien affidavit does not provide a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Bankruptcy Court's ruling that Bruington Engineering, Ltd. does not have a valid lien against the Fernando Garza Deep Lease is AFFIRMED.

### 8.    Yazoo Enterprises, Inc. (Exhibit 9)

Certain Settling Working Interest Claimants filed objections to Yazoo Enterprises, Inc.'s ("Yazoo") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit. The Bankruptcy Court sustained the property description objection and invalidated the lien. Yazoo appeals.

Yazoo's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Fernando Garza Deep Lease. In fact, it makes no reference to any lease whatsoever. At most, the lien affidavit refers only to certain wells. Reference to wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Yazoo's lien affidavit does not provide a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Bankruptcy Court's ruling that Yazoo Enterprises, Inc. does not have a valid lien the Fernando Garza Deep Lease is AFFIRMED.

### 9.    Dorsal Services, Inc. (Exhibit 10)

Certain Settling Working Interest Claimants filed objections to Dorsal Services, Inc.'s ("Dorsal") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4). The

Bankruptcy Court sustained the objection and invalidated the lien.  Dorsal appeals.

Dorsal's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Fernando Garza Deep Lease.  At most, the lien affidavit refers only to certain wells. Reference to wells alone is not sufficient.  *See Trevor Rees-Jones*, 799 S.W.2d at 463.  The Bankruptcy Court's ruling that Dorsal's lien affidavit does not provide a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Bankruptcy Court's ruling that Dorsal Services, Inc. does not have a valid lien against the Fernando Garza Deep Lease is AFFIRMED.

### 10.    Texas Energy Services, LP (Exhibit 11)

Certain Settling Working Interest Claimants filed objections to Texas Energy Services, LP.'s ("Texas Energy") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court sustained the objection and invalidated the lien.  Texas Energy appeals.

Texas Energy's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Fernando Garza Deep Lease.  At most, the lien affidavit refers only to certain wells. Reference to wells alone is not sufficient.  *See Trevor Rees-Jones*, 799 S.W.2d at 463.  The Bankruptcy Court's ruling that Texas Energy's lien affidavit does not provide a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Bankruptcy Court's ruling that Texas Energy Services, LP does not have a valid lien against the Fernando Garza Deep Lease is AFFIRMED.

### 11.    Ainsworth Trucking, Inc. (Exhibit 13)

Certain Settling Working Interest Claimants filed objections to Ainsworth Trucking, Inc.'s ("Ainsworth") lien claim against the Hastings-Lopez Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4). The Bankruptcy Court overruled the objection and validated the lien.  The Settling Working Interest Claimants appeal.

Ainsworth's lien affidavit attaches a plat and Form W-1.  For the reasons explained above, the Court finds this provides a sufficient property description of the Hastings-Lopez Lease to satisfy section 56.022(a)(4).  The Bankruptcy Court's ruling that Ainsworth's lien affidavit provides a sufficient description of the Hastings- Lopez Lease is AFFIRMED.

The Bankruptcy Court's ruling that Ainsworth Trucking, Inc. has a VALID LIEN against the Hastings-Lopez Lease in the amount of $75,691.03 is AFFIRMED.

### 12.    Bruington Engineering, Ltd. (Exhibit 14)

Certain Settling Working Interest Claimants filed objections to Bruington Engineering, Ltd's ("Bruington") lien claim against the Hastings-Lopez Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit.  The Bankruptcy Court sustained the property description objection and invalidated the lien.  Bruington appeals.

Bruington's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Hastings-Lopez Lease.  At most, the lien affidavit refers only to certain wells.  Reference to

wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Bruington's lien affidavit does not provide a sufficient description of the Hastings-Lopez Lease is AFFIRMED.

The Bankruptcy Court's ruling that Bruington does not have a valid lien against the Hastings-Lopez Lease is AFFIRMED.

### 13.     Petron Industries, Inc. (Exhibit 15)

Certain Settling Working Interest Claimants filed objections to Petron Industries, Inc.'s ("Petron") lien claim against the Hastings-Lopez Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit. The Bankruptcy Court sustained the property description objection and invalidated the lien. The Settling Working Interest Claimants appeal.

Petron's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Hastings-Lopez Lease. At most, the lien affidavit refers only to certain wells. Reference to wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Petron's lien affidavit does not provide a sufficient description of the Hastings-Lopez Lease is AFFIRMED.

The Bankruptcy Court's ruling that Petron does not have a valid lien against the Hastings-Lopez Lease is AFFIRMED.

### 14.    Yazoo Enterprises, Inc. (Exhibit 16)

Certain Settling Working Interest Claimants filed objections to Yazoo Enterprises, Inc.'s ("Yazoo") lien claim against the Hastings-Lopez Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit.  The Bankruptcy Court sustained the property description objection and invalidated the lien.  Yazoo appeals.

Yazoo's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Hastings-Lopez Lease.  At most, the lien affidavit refers only to certain wells.  Reference to wells alone is not sufficient.  *See Trevor Rees-Jones*, 799 S.W.2d at 463.  The Bankruptcy Court's ruling that Yazoo's lien affidavit does not provide a sufficient description of the Hastings-Lopez Lease is AFFIRMED.

The Bankruptcy Court's ruling that Yazoo Enterprises, Inc.  does not have a valid lien against the Hastings-Lopez Lease is AFFIRMED.

### 15.    Strata Control Services, Inc. (Exhibit 17)

Certain Settling Working Interest Claimants filed objections to Strata Control Services, Inc.'s ("Strata") lien claim against the Hastings-Lopez Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit.  The Bankruptcy Court sustained the property description objection and invalidated the lien.  Strata appeals.

58

Strata's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Hastings-Lopez Lease. At most, the lien affidavit refers only to certain wells. Reference to wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Strata's lien affidavit does not provide a sufficient description of the Hastings-Lopez Lease is AFFIRMED.

The Bankruptcy Court's ruling that Strata Control Services, Inc. does not have a valid lien against the Hastings-Lopez Lease is AFFIRMED.

### 16. Rathole Drilling, Inc. (Exhibit 19)

Certain Settling Working Interest Claimants filed objections to Rathole Drilling, Inc.'s ("Rathole") lien claim against the Hastings-Lopez Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the fact that the affidavit was signed by an attorney who did not have personal knowledge of facts contained in the affidavit. The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants appeal.

Rathole's lien affidavit attaches a plat and Form W-1. For the reasons explained above, the Court finds this provides a sufficient property description of the Hastings-Lopez Lease to satisfy section 56.022(a)(4). The Bankruptcy Court's ruling that Rathole's lien affidavit provides a sufficient description of the Hastings- Lopez Lease is AFFIRMED.

The Bankruptcy Court did not explain why it overruled the attorney-signed affidavit objection. The Court finds this objection has no merit. *Energy Fund of America, Inc. v. G.E.T. Service Co.*, 610 S.W.2d 833 (Tex. Civ. App. – Eastland, 1981).

The Bankruptcy Court's ruling that Rathole Drilling, Inc. has a VALID LIEN against the Hastings-Lopez Lease in the amount of $10,654.37 is AFFIRMED.

### 17.    Thru Tubing Solutions (Exhibit 21)

Certain Settling Working Interest Claimants filed objections to Thru Tubing Solutions' ("Thru Tubing") lien claim against the Pipes Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court overruled the objection and validated the lien.

Thru Tubing's lien affidavit attaches a plat and Form W-1.  For the reasons explained above, the Court finds this provides a sufficient property description of the Pipes Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that Thru Tubing's lien affidavit provides a sufficient description of the Pipes Lease is AFFIRMED.

The Bankruptcy Court's ruling that Thru Tubing Solutions has a VALID LIEN against the Pipes Lease in the amount of $15,728.19 is AFFIRMED.

## VI.    LIEN CLAIM OBJECTIONS HEARD ON DECEMBER 11, 2008

On December 11, 2008, the Bankruptcy Court heard objections to additional lien claims filed on several leases, including the Peal Ranch Lease and Frost Bank Lease located in Duval County, Texas, the Fernando Garza Deep Lease located in Zapata County, Texas, the Hastings-Lopez Lease located in Starr County, Texas, and the Pipes Lease located in Hill County, Texas.  As explained above, with the exception of the Hastings-Lopez Lease, all of the lease agreements are part of the record on appeal.  The plats and Form W-1s attached to each respective lien claim heard on December 11, 2008, provide the same descriptive

information set forth above for the applicable lease described in each lien claim.

The Bankruptcy Court also considered the proffered testimony of Maurice Amidei. On January 8, 2009, the Bankruptcy Court entered an order validating and invalidating certain liens. Various parties appeal. This Court will use the exhibit list admitted at the December 11, 2008, hearing and examine each lien claim in that order.

### 1.    Alice Southern Equipment, Inc. (Exhibit 1)

Certain Settling Working Interest Claimants filed objections to Alice Southern Equipment, Inc.'s ("Alice Southern") lien claim against the Hastings-Lopez Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4), the failure to include the dates of performance under §56.022(a)(3), and the affiant's failure to include the property description information in the sworn portion of the affidavit. The Bankruptcy Court overruled the objections and validated the lien.

A plat is attached to Alice Southern's affidavit. For the reasons explained above, the Court finds this provides a sufficient property description of the Hastings-Lopez Lease to satisfy §56.022(a)(4). The Bankruptcy Court's ruling that Alice Southern's lien affidavit provides a sufficient description of the Hastings-Lopez Lease is AFFIRMED.

The Bankruptcy Court did not explicitly rule on the dates of performance objection. On the second page of its affidavit, Alice Southern provides " ... the dates of performance or furnishings of material and labor are set out in the invoices attached hereto as Exhibits 'A-1' through 'A-3.'" The attached invoices indicate goods were provided on a "daily rental" basis. The specific dates for rental are indicated on each invoice. Exhibit A-1 indicates a 3"

61

waterline is billed "8/3/2006 to 8/31/2006." The other invoices follow the same pattern. The Court finds this provides the dates of performance to satisfy §56.022(a)(3).

On the second page of Alice Southern's affidavit, the notary public certifies that Ivan Shay Pierce, Jr., President of Alice Southern Equipment Service, Inc., swore " ... that the facts set out above in Paragraph 2.2. [of the affidavit] are true and correct; that the material and labor as itemized in the invoices comprising Exhibit 'A' is within the knowledge of the Affiant, just and true; and that the amounts claimed therein are due ..." On the third page of the affidavit, the same notary public issues a second jurat, which states, "SUBSCRIBED AND SWORN TO BEFORE ME by the said Ivan Shay Pierce, Jr. ..." Paragraph 2.2. of the affidavit provides the amount claimed, the dates of performance and itemization as reflected in the attached invoices, and the names and addresses of the leasehold interest owner and claimant. Paragraph 2.2 does not provide a description of the Hastings-Lopez Lease. Paragraphs 1 and 3 of the lien affidavit describe the leasehold interest as that which is described on the attached Exhibit 'B,' which consists of a single plat.

The Court finds the second jurat shows the entire document, which includes paragraphs 1, 3, and Exhibit B, was sworn to before the notary public. As such, the Court finds that the property description is included within the sworn portion of the affidavit.

The Court AFFIRMS the Bankruptcy Court's ruling that Alice Southern Equipment, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Hastings-Lopez Lease for $14,513.98.

2.      **Key Energy Services, Inc. (Exhibit 2)**

Certain Settling Working Interest Claimants filed objections to Key Energy Services, Inc.'s ("Key Energy's") lien claim against the Hastings-Lopez Lease with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court overruled the objection and validated the lien.  The Settling Working Interest Claimants appeal.

A plat and Form W-1 are attached to Key Energy's affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Hastings-Lopez Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that Key Energy's lien affidavit provides a sufficient description of the Hastings-Lopez Lease is AFFIRMED.

The Court AFFIRMS the Bankruptcy Court's ruling that Key Energy Services, Inc.'s lien lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Hastings-Lopez Lease for $4,510.60.

3.      **Key Energy Services, Inc. (Exhibit 6)**

Certain Settling Working Interest Claimants filed objections to Key Energy Services, Inc.'s ("Key Energy") lien claim against the Pipes Lease with the Bankruptcy Court.   They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court overruled the objection and validated the lien.  The Settling Working Interest Claimants appeal.

A plat and Form W-1 are attached to Key Energy's affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Pipes Lease to

satisfy  §56.022(a)(4).  The Bankruptcy Court's ruling that Key Energy's lien affidavit provides a sufficient description of the Pipes Lease is AFFIRMED.

The Court AFFIRMS the Bankruptcy Court's ruling that Key Energy Services, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Pipes Lease for $9,857.47.

### 4.    W.L. Flowers Machine & Welding Co., Inc. (Exhibit 8)

Certain Settling Working Interest Claimants filed objections to W.L. Flowers Machine & Welding Co., Inc. ("Flowers") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court.   They objected to the adequacy of the property description under §56.022(a)(4) and the failure to include the dates of performance under §56.022(a)(3).  The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants appeal.

A plat is attached to Flowers' affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Fernando Garza Deep Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that Flowers' lien affidavit provides a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Bankruptcy Court did not explicitly rule on the dates of performance objection.  On the second page of its affidavit, Flowers provides " ... the dates of performance or furnishings of material and labor are set out in the invoices attached hereto as Exhibits 'A-1' and 'A-2.'" The attached invoices provide the "Work Order No." and "Date" as September 14, 2006.   There is no evidence before the Court that Flowers performed work on any day

other than September 14, 2006.  As such, the Court finds the invoices provide the dates of performance to satisfy §56.022(a)(3).

The Court AFFIRMS the Bankruptcy Court's ruling that W.L. Flowers Machine & Welding Co., Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Fernando Garza Deep Lease for $3,004.26.

### 5.    Yazoo Enterprises, Inc. (Exhibit 10)

Certain Settling Working Interest Claimants filed objections to Yazoo Enterprises, Inc.'s ("Yazoo") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court.  They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court sustained the objection and invalidated the lien.  Yazoo appeals.

Yazoo's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Fernando Garza Deep Lease.  At most, the lien affidavit refers only to certain wells. Reference to wells alone is not sufficient.  *See Trevor Rees-Jones*, 799 S.W.2d at 463.  The Bankruptcy Court's ruling that Yazoo's lien affidavit does not provide a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Bankruptcy Court's ruling that Yazoo Enterprises, Inc. does not have a valid lien against the Fernando Garza Deep Lease is AFFIRMED.

### 6.    Petron Industries Inc. (Exhibit 12)

Certain Settling Working Interest Claimants filed objections to Petron Industries Inc.'s ("Petron") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court.

65

They objected to the adequacy of the property description under § 56.022(a)(4). The Bankruptcy Court sustained the objection and invalidated the lien. Petron appeals.

Petron's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Fernando Garza Deep Lease. At most, the lien affidavit refers only to certain wells. Reference to wells alone is not sufficient. *See Trevor Rees-Jones*, 799 S.W.2d at 463. The Bankruptcy Court's ruling that Petron's lien affidavit does not provide a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Bankruptcy Court's ruling that Petron Industries Inc. does not have a valid lien against the Fernando Garza Deep Lease is AFFIRMED.

### 7.     Alice Southern Equipment, Inc. (Exhibit 13)

Certain Settling Working Interest Claimants filed objections to Alice Southern Equipment, Inc.'s ("Alice Southern") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court.   They objected to the adequacy of the property description under §56.022(a)(4), the failure to include the dates of performance under §56.022(a)(3), and the affiant's failure to include the property description information in the sworn portion of the affidavit. The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants appeal.

A plat is attached to Alice Southern's affidavit. For the reasons explained above, the Court finds this provides a sufficient property description of the Fernando Garza Deep Lease to satisfy §56.022(a)(4). The Bankruptcy Court's ruling that Alice Southern's lien affidavit provides a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Bankruptcy Court did not explicitly rule on the dates of performance objection. On the second page of its affidavit, Alice Southern provides " ... the dates of performance or furnishings of material and labor are set out in the invoices attached hereto as Exhibits 'A-1' through 'A-3.'" The attached invoices indicate goods were provided on a "daily rental" basis. The specific dates for rental are indicated on each invoice. Exhibit A-1 indicates a 3" water pump is billed "7/13/2006 to 7/31/2006." The other invoices follow the same pattern. The Court finds this provides the dates of performance to satisfy §56.022(a)(3).

On the second page of Alice Southern's affidavit, the notary public certifies that Ivan Shay Pierce, Jr., President of Alice Southern Equipment Service, Inc., swore " ... that the facts set out above in Paragraph 2.2. [of the affidavit] are true and correct; that the material and labor as itemized in the invoices comprising Exhibit 'A' is within the knowledge of the Affiant, just and true; and that the amounts claimed therein are due ..."  On the third page of the affidavit, the same notary public issues a second jurat, which states, "SUBSCRIBED AND SWORN TO BEFORE ME by the said Ivan Shay Pierce, Jr. ..." Paragraph 2.2. of the affidavit provides the amount claimed, the dates of performance and itemization as reflected in the attached invoices, and the names and addresses of the leasehold interest owner and claimant. Paragraph 2.2 does not provide a description of the Fernando Garza Deep Lease. Paragraphs 1 and 3 of the lien affidavit describe the leasehold interest as that which is described on the attached  Exhibit 'B,' which consists of a single plat.

The Court finds the second jurat shows the entire document, which includes paragraphs 1, 3, and Exhibit B, was sworn to before the notary public.  As such, the Court finds that the

property description is included within the sworn portion of the affidavit.

The Court AFFIRMS the Bankruptcy Court's ruling that Alice Southern Equipment, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Fernando Garza Deep Lease for $24,396.14.

### 8.     Basic Energy Services, Inc. (Exhibit 16)

Certain Settling Working Interest Claimants filed objections to Basic Energy Services, Inc.'s ("Basic Energy") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court.   They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants appeal.

A plat and Form W-1 are attached to Basic Energy's affidavit. For the reasons explained above, the Court finds this provides a sufficient property description of the Fernando Garza Deep Lease to satisfy section 56.022(a)(4).  The Bankruptcy Court's ruling that Basic Energy's lien affidavit provides a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

The Court AFFIRMS the Bankruptcy Court's ruling that Basic Energy Services, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Fernando Garza Deep Lease for $2,854.76.

### 9.     FESCO, Ltd. (Exhibit 17)

Certain Settling Working Interest Claimants filed objections to FESCO, Ltd.'s ("FESCO") lien claim against the Fernando Garza Deep Lease with the Bankruptcy Court.

68

They objected to the adequacy of the property description under §56.022(a)(4)  and the affiant's failure to include the property description information in the sworn portion of the affidavit.  The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants appeal.

A plat is attached to FESCO's affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Fernando Garza Deep Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that FESCO's lien affidavit provides a sufficient description of the Fernando Garza Deep Lease is AFFIRMED.

On the second page of FESCO's affidavit, the notary public certifies that Steven F. Findley, President of FESCO Management, L.L.C., swore " ... that the facts set out above in Paragraph 2.2. [of the affidavit] are true and correct; that the material and labor as itemized in the invoices comprising Exhibit 'A' is within the knowledge of the Affiant, just and true; and that the amounts claimed therein are due ..."  On the third page of the affidavit, the same notary public issues a second jurat, which states, "SUBSCRIBED AND SWORN TO BEFORE ME by the said Steven F. Findley ..." Paragraph 2.2. of the affidavit provides the amount claimed, the dates of performance and itemization as reflected in the attached invoices, and the names and addresses of the leasehold interest owner and claimant. Paragraph 2.2 does not provide a description of the Fernando Garza Deep Lease.  Paragraphs 1 and 3 of the lien affidavit describe the leasehold interest as that which is described on the attached  Exhibit 'B,' which consists of a single plat.

The Court finds the second jurat indicates the entire document, which includes paragraphs 1, 3, and Exhibit B, was sworn to before the notary public.  As such, the Court finds that the property description is included within the sworn portion of the affidavit.

The Court AFFIRMS the Bankruptcy Court's ruling that FESCO, Ltd.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Fernando Garza Deep Lease for $11,963.97.

### 10.    Strata Control Services, Inc. (Exhibit 21)

Various parties filed objections to Strata Control Services, Inc.'s ("Strata") lien claim against the Frost Bank Lease with the Bankruptcy Court.   They objected to the adequacy of the property description under §56.022(a)(4).  The Bankruptcy Court sustained the objection and invalidated the lien.  Strata appeals.

Strata's lien affidavit does not attach a plat, a Form W-1, or otherwise describe the Frost Bank Lease.  At most, the lien affidavit refers only to certain wells.  Reference to wells alone is not sufficient.  *See Trevor Rees-Jones*, 799 S.W.2d at 463.  The Bankruptcy Court's ruling that Strata's lien affidavit does not provide a sufficient description of the Frost Bank Lease is AFFIRMED.

The Bankruptcy Court's ruling that Strata Control Services, Inc. does not have a valid lien against the Frost Bank Lease is AFFIRMED.

### 11.    Key Energy Services, Inc. (Exhibit 22)

Certain Settling Working Interest Claimants filed objections to Key Energy Services, Inc.'s ("Key Energy") lien claim against the Frost Bank Lease with the Bankruptcy Court.

They objected to the adequacy of the property description under §56.022(a)(4).   The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants appeal.

Two plats and Form W-1s are attached to Key Energy's affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Frost Bank Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that Key Energy's lien affidavit provides a sufficient description of the Frost Bank Lease is AFFIRMED.

The Court AFFIRMS the Bankruptcy Court's ruling that Key Energy Services, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Frost Bank Lease for $27,636.42.

### 12.    Basic Energy Services, Inc. (Exhibit 23)

Certain Settling Working Interest Claimants filed objections to Basic Energy Services, Inc.'s ("Basic Energy") lien claim against the Frost Bank Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4).   The Bankruptcy Court overruled the objections and validated the lien.  The Settling Working Interest Claimants appeal.

A plat and Form W-1s are attached to Basic Energy's affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Frost Bank Lease to satisfy §56.022(a)(4).  The Bankruptcy Court's ruling that Basic Energy's lien affidavit provides a sufficient description of the Frost Bank Lease is AFFIRMED.

71

The Court AFFIRMS the Bankruptcy Court's ruling that Basic Energy Services, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Frost Bank Lease for $17,280.00.

### 13.    Beck Brothers, Inc. (Exhibit 24)

Certain Settling Working Interest Claimants filed objections to Beck Brothers, Inc.'s ("Beck Bros.") lien claim against the Frost Bank Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4). Beck Bros. argued the objection was foreclosed by a pervious order issued by the Bankruptcy Court on November 11, 2007. In that order, the Bankruptcy Court considered an objection raised by *Reichmann* against Beck Bros.'s lien claim against the Frost Bank Lease. The Bankruptcy Court validated the lien.

On appeal to this Court, the Settling Working Interest Claimants argue the Bankruptcy Court erred in considering its previous order. The Settling Working Interest Claimants contend they never had an opportunity to object to Beck Bros.'s lien claim because they never received a copy thereof. At the hearing on December 11, 2008, the Bankruptcy Court overruled the property description objection and held, "[W]ith respect to Beck Brothers, in addition to the description being okay, it also has a final order, and we find that the objection's not appropriate at this time anyway. But to the extent that the objection's appropriate, the description's valid and its okay." The Settling Working Interest Claimants appeal.

On the first page of its affidavit Beck Bros. provides:

> [T]he mineral leasehold interests for which the labor and services were performed and to which the lien applies are all mineral interests owned now or at any relevant time by Reichmann Petroleum Corp. in the County of Duval, State of Texas, including but not by way of limitation, those described and recorded as follows: Volume 434, Pages 483 through 485; Volume 427, Pages 141 through 153; Volume 418, Pages 186 through 188; Volume 413, Pages 150 through 156, and Volume 350, Pages 558 through 561; of the official deed or mineral interest records of Duval County, Texas.

The Frost Bank "Amendment to Oil and Gas Lease" are included in the record on appeal to this Court. It is uncontested that the amendment is recorded in the official records of Duval County, Texas, at Vol. 418, Pages 186-188. This recording information is included on the face of the lien affidavit. A description of an oil and gas lease given by providing the place of recording in the county records is a sufficient description. *Trevor Rees-Jones*, 799 S.W.2d at 463; *Youngstown*, 403 F.2d at 144. The Court finds this property description satisfies §56.022(a)(4) of the Texas Property Code. Any error by the Bankruptcy Court in considering its November 11, 2007, order is mooted by this Court's ruling on the property description objection.

The Bankruptcy Court's ruling that Beck Brothers, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Frost Bank Lease for $92,973.25 is AFFIRMED.

### 14. V.P. Sales & Company, LP (Exhibit 28)

Certain Settling Working Interest Claimants filed objections to V.P. Sales & Company, LP's ("V.P. Sales") lien claim against the Peal Ranch Lease with the Bankruptcy Court.

73

They objected to the adequacy of the property description under § 56.022(a)(4) and the affiant's failure to include the property description information in the sworn portion of the affidavit. The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants appeal.

Four plats are attached to V.P. Sales' affidavit. For the reasons explained above, the Court finds this provides a sufficient property description of the Peal Ranch Lease to satisfy §56.022(a)(4). The Bankruptcy Court's ruling that V.P. Sales' lien affidavit provides a sufficient description of the Peal Ranch Lease is AFFIRMED.

On the third page of V.P. Sales' affidavit, the notary public certifies that Victor Perez, Member/Partner of V.P. Sales & Company, L.P., swore " ... that the facts set out above in Paragraph 2.2. [of the affidavit] are true and correct; that the material and labor as itemized in the invoices comprising Exhibit 'A' is within the knowledge of the Affiant, just and true; and that the amounts claimed therein are due ..."  Below, the same notary public issues a second jurat, which states, "SUBSCRIBED AND SWORN TO BEFORE ME by the said Victor Perez ..." Paragraph 2.2. of the affidavit provides the amount claimed, the dates of performance and itemization as reflected in the attached invoices, and the names and addresses of the leasehold interest owner and claimant. Paragraph 2.2 does not provide a description of the Peal Ranch Lease. Paragraphs 1 and 3 of the lien affidavit describe the leasehold

74

The Court finds the second jurat indicates the entire document, which includes paragraphs 1, 3, and Exhibit B, was sworn to before the notary public.  As such, the Court finds that the property description is included within the sworn portion of the affidavit.

The Court AFFIRMS the Bankruptcy Court's ruling that V.P. Sales & Company, LP's lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN on the Peal Ranch Lease for $3,039.68.

### 15.    Key Energy Services, Inc. (Exhibit 29)

Certain Settling Working Interest Claimants filed objections to Key Energy Services, Inc.'s ("Key Energy") lien claim against the Peal Ranch Lease with the Bankruptcy Court. They objected to the adequacy of the property description under §56.022(a)(4) and the failure to provide evidence that the lien claim was timely filed.  The Bankruptcy Court overruled the objections and validated the lien. The Settling Working Interest Claimants appeal.

Two plats and Form W-1s are attached to Key Energy's affidavit.  For the reasons explained above, the Court finds this provides a sufficient property description of the Peal Ranch Lease to satisfy section 56.022(a)(4).  The Bankruptcy Court's ruling that Key Energy's lien affidavit provides a sufficient description of the Peal Ranch Lease is AFFIRMED.

Section 56.021 provides, "[N]ot later than six months after the day the indebtedness accrues, a person claiming the lien must file an affidavit with the county clerk of the county in which the property is located."  The Settling Working Interest Claimants contend there is no evidence that Key Energy's lien claim was timely filed because the document does not

include a file stamp.

At the hearing on December 11, 2008, Kevin Koel, counsel for Key Energy represented to the Bankruptcy Court that the instrument was timely filed on January 10, 2007 – "I called the Duval County Clerk yesterday to verify ..."  Key Energy also introduced a printout from *countyclerk.com* to verify the document was timely filed.  Timothy Dowling objected to the admission of counsel's testimony as being hearsay in violation of FED. R. EVID. 802 and to the admission of the printout because it was not certified in violation of FED. R. EVID. 1005.  The Bankruptcy Court permitted the oral statement of Kevin Koel and the printout as evidence of when Key Energy's lien claim was filed.  The Bankruptcy Court explained,

> [T]o be perfectly honest, I think probably his representation would be sufficient in the context of this type of litigation, for me to believe that it's likely that it was filed on time.

> So if Mr. Dowling doubts this, I think you can file a – I will, since the evidence is somewhat shaky on this point, but I'm willing to believe that it was properly timely filed.  I will allow you [Dowling], within the next ten days, if you want to present something to show that it was not timely filed, I will reconsider my order, and I'll sanction you [ Koel] for coming in here and telling me that it was properly done.

On December 19, 2008, Key Energy supplemented the record below with a certified copy of its lien claim on the Peal Ranch Lease.  The certified copy is part of the record on appeal to this Court, and it verifies the lien claim was timely filed on January 11, 2007.  No evidence was offered to the contrary.

The Court acknowledges the Bankruptcy Court erred in admitting the testimony of Kevin Koel and the *countyclerk.com* printout.  That having been noted, this Court finds the

Bankruptcy Court, exercising its equitable discretion, had good cause to open the evidentiary record and consider new evidence.  The record before this Court demonstrates Key Energy's lien claim against the Peal Ranch Lease was timely filed.

The Bankruptcy Court's ruling that Key Energy Services, Inc.'s lien affidavit complies with Chapter 56 of the Texas Property Code and secures a VALID LIEN in the amount of $20,782.41 on the Peal Ranch Lease is AFFIRMED.

Having made the preceding findings and rulings, the Court enters this order on March 31, 2009.

ORDERED March 31, 2009.

_____
HAYDEN HEAD
CHIEF JUDGE

77